WASHINGTON AGENCY, INC., v. COMMISSIONER OF INSURANCE.

1. INSURANCE—CORPORATE AGENCY AFFILIATED WITH BANK—LICENSES—PUBLIC POLICY.

Finding of commissioner of insurance that corporate insurance agency whose stockholders were the same as those of a national bank and whose stock was held in trust by four trustees, removable at will by a majority of the bank's directors, was not a proper and fit corporation to transact business as an insurance agent because license so to operate was employed contrary to public policy was justified by evidence (12 USCA, § 92; 3 Comp. Laws 1929, § 12339, as amended by Act No. 163, Pub. Acts 1931).

2. OFFICERS—ADMINISTRATIVE OFFICERS—INTERFERENCE BY COURTS.

Courts will not interfere with the act of a public administrative officer acting within the scope of his authority.

BUTZEL, J., dissenting.

Petition by Washington Agency, Inc., a Michigan corporation, for a writ of mandamus to compel David A. Forbes, Commissioner of Insurance, to vacate an order revoking plaintiff's license as an insurance agent. Submitted June 13, 1944. (Calendar No. 42,587.) Writ denied October 11, 1944.

*Butzel, Eaman, Long, Gust & Bills* (*Thomas G. Long,* of counsel), for plaintiff.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Daniel J. O'Hara* and *Maurice M. Moule,* Assistants Attorney General, for defendant.

Reid, J.   This petition is brought for mandamus to require the commissioner of insurance to continue the license of plaintiff to write insurance as an agency.  Plaintiff is a Michigan corporation, incorporated December 9, 1940, with powers under its charter to conduct the business of an insurance agency.  License was applied for and issued December 26, 1940, and has been renewed each year since.

A complaint was filed with the commissioner.  He sent plaintiff notice of a hearing which was held in his office October 13, 1943, at the conclusion of which the license was revoked.  At the hearing testimony was introduced on the relationship between plaintiff and the Industrial National Bank—Detroit, a Federal corporation.

"Licenses for agents shall be issued only to persons who are actual residents of this State, or to corporations of this State."   3 Comp. Laws 1929, § 12339, as amended by Act No. 163, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 12339, Stat. Ann. 1943 Rev. § 24.133).

Plaintiff, proceeding on the theory that the revocation was on the ground that the same persons held all the shares of the capital stock of the two corporations, claimed that consequently the ruling was discriminatory and a deprivation in violation of section 1 of the Fourteenth Amendment to the Federal Constitution.  Defendant admits that his action could not have been well taken on so narrow a ground.  He evidently was led by that state of affairs to scrutinize the affairs of plaintiff more closely.

The issue on this appeal is whether plaintiff's activities are controlled by the bank and whether the bank by indirection and subterfuge obtained this license in the name of plaintiff to evade the State statute and the Federal statute (12 USCA, § 92) which

permits a national bank to act as insurance agent only when located in places of less than 5,000 population.

The policy of government respecting such matters as intimate relationships between banks and insurance agencies is for the most part set forth in legislation and executive actions. Congress views with none too great favor a national bank acting as insurance agent, forbidding it in places of 5,000 or more population.

Mr. Bramble, the commissioner's investigator, in his report, made March 27, 1942, found:

"The patent fact that all business of the Washington Agency, Inc., originates in the Industrial National Bank—Detroit, and with clients of the bank, particularly with applicants for loans secured by personal property, presents implications subject to interpretation that the close relationship of the agency and the bank is not conducive to practices desired by this department."

It appears that the bank and plaintiff were organized at the same time.

Plaintiff sets forth that the Industrial National Bank—Detroit succeeded the Industrial Morris Plan Bank which practically from the beginning of its business in 1917 had found it necessary to render assistance to borrowers in obtaining insurance, and claims that requiring such insurance is common practice among lenders of money, individual and corporate; also that by correspondence when the Industrial National Bank—Detroit was organized, the comptroller of the currency treated the Washington Agency, Inc., as an affiliate of the bank, that is, that their relationship consisted only in the fact that their stockholders were the same persons.

When plaintiff was organized, the original capital was paid in December 9, 1940, by Mr. Bowen, who was the sole stockholder; at the first meeting after incorporation, December 17, 1940, Messrs. Lewis, Turnbull, Ropp, Rugg, McLean, Taub and Bowen were elected directors, all of whom except Bowen were officers and directors of the bank. The only shares of stock that were ever issued were the shares to Mr. Bowen, which shares in turn were later issued to the four trustees, Messrs. Lewis, Turnbull, Ropp and Rugg, who were principal officers of the bank.

Their declaration of trust dated January 20, 1941, stated that they held the legal title to the shares for the use and benefit of the stockholders of the bank but trustees had the right to vote and exercise all acts of ownership of the stock of plaintiff. A majority of the directors of the bank could at will remove any or all of the trustees. The shareholders of the Washington Agency, Inc., received their dividends along with their bank's dividends, all in one check. Plaintiff showed that the Washington Agency, Inc., wrote the insurance in an average of about 40 per cent. of the bank's loans in the last three years.

Not until after a preceding hearing before the commissioner of insurance was provision made for the issuing of any certificates to the shareholders of plaintiff corporation. Later and apparently on October 26, 1943, the shareholders were notified of a change in the terms of the trust whereby each had the right to get his certificate on request. The same notice said, "It is believed that it is more convenient and better for all concerned that the shares be left with the trustees." No stockholder asked for his certificate.

There was competent testimony to indicate that plaintiff is organized under a plan by which the

executive officers of the bank have entire control over plaintiff's operations for the financial benefit of the same persons who are the bank's stockholders.

The commissioner found:

"The Washington Agency, Inc., was organized to circumvent 3 Comp. Laws 1929, § 12339, as amended, by indirection and subterfuge, by obtaining an insurance agency license for the benefit of the Industrial National Bank, which is prohibited by such law; and it further appearing that there was sufficient cause shown that the said Washington Agency, Inc., is not a 'proper and fit' corporation to be permitted to transact business as an insurance agent in this State contrary to 3 Comp. Laws 1929, § 12344, as amended [by Act No. 163, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 12344, Stat. Ann. 1943 Rev. § 24.138)] and 12 USCA, § 92, because of its inevitable control by and identity with the said Industrial National Bank; and it further appearing that the said license is employed contrary to public policy;

"It is ordered that the insurance agent's license of the Washington Agency, Inc., be and the same is hereby revoked."

Courts will not interfere with the act of a public administrative officer acting fairly within the scope of his authority. The testimony, taken as a whole, furnished a basis for defendant's finding. The petition must be dismissed, with costs to defendant.

NORTH, C. J., and STARR, WIEST, BUSHNELL, SHARPE, and BOYLES, JJ., concurred with REID, J.

BUTZEL, J. (*dissenting*). I am not in accord with the foregoing opinion. While a writ of mandamus is a writ of grace, nevertheless it should be issued where a public officer does something that he is not authorized to do or refrains from doing something

that he ought to do. It is not merely a question of discretion when he refuses to renew a license for reasons not supported either by law or facts. The foregoing opinion upholds the commissioner on the grounds that the Washington Agency, Inc., is a corporation which by indirection and subterfuge obtained its license in order to evade the State statute and the Federal statute (12 USCA, § 92). There is no breach of the Federal statute when a corporation, not a bank, goes into the insurance field and establishes an insurance agency. The correspondence introduced shows that there was no objection by the controller of currency or any other Federal authority to the plaintiff going into the insurance field. In a letter from the deputy controller, it was stated that it was recognized that the agency corporation would be an affiliate of the bank, and the arrangement had the government's approval. Surely the insurance commissioner could not claim there was any infraction of the Federal statutes.

The main objection is made on the ground that plaintiff was organized so that by indirection and subterfuge it could obtain a license. We fail to see any basis for this claim. The plaintiff was organized legally to do a lawful business that it was precluded from doing as a national bank under the Federal banking law. That law apparently does not prevent a bank from forming an affiliate and engaging in a lawful business. There are many things a bank cannot do. It cannot engage in a mercantile manufacturing business although through foreclosure or some other reason it might be a wise thing for a bank to do. It would be *ultra vires*. There was no subterfuge in what plaintiff did openly and legally. I see no indirection in forming a distinct, separate corporation of this nature.

No claim is made that borrowers at the bank were obliged to take out more insurance than was required as security. They had the option to insure where they preferred. It was a convenience to them as well as to the bank to have any insurance required for a loan placed promptly with a responsible agent. Clearly, it is evident that the business largely originated in the bank and the profit from it went to the stockholders in the corporation who are also stockholders of the bank. A similar situation exists in other corporations formed by finance, mortgage and real-estate companies, as well as other corporations where a large amount of insurance is frequently required for customers or employees. The office of the plaintiff is no longer in the same building as the bank. The trust was partly dissolved, and, to remove even any remote suspicion, it should be completely dissolved so that the stockholders own their stock outright and none of the stock should be tied up in any way with the bank. This would remove any possible objection as far as I can see to the plaintiff being entitled to renewal of its license.

Stress is laid upon the case of *People, ex rel. Attorney General,* v. *Michigan Bell Telephone Co.,* 246 Mich. 198 (P. U. R. 1929 B, 455, P. U. R. 1929 E, 27), but this case and others wherein the corporate entity had been disregarded have been fully discussed and distinguished in *Gledhill* v. *Fisher & Co.,* 272 Mich. 353 (102 A. L. R. 1042).

A similar question was presented in *Finley* v. *Union Joint Stock Land Bank of Detroit,* 281 Mich. 214, 220, wherein we said:

"In the case at bar the land bank did not own directly or indirectly any stock in the Central States

Investment Corporation. The investment company had an independent corporate existence and charter; it filed its annual reports; kept its own minutes of its meetings and from time to time it held meetings of its stockholders and directors. It was organized as a profit-sharing corporation; the profits, if any, were to go to its individual stockholders.''

In *Re Watertown Paper Co.,* 94 C. C. A. 528 (169 Fed. 252), in the opinion of Judge Noyes of the circuit court of appeals for the second circuit, the question was presented as to whether a pulp company and a paper company, two corporations in which the stockholders were largely the same, should be treated as one corporation and the corporate entity should be disregarded. The court said:

''Now, it is an elementary and fundamental principle of corporation law that a corporation is an entity separate and distinct from its stockholders and from other corporations with which it may be connected. The fact that the stockholders of two separately chartered corporations are identical, that one owns shares in another, and that they have mutual dealings, will not, as a general rule, merge them into one corporation, or prevent the enforcement against the insolvent estate of the one of an otherwise valid claim of the other. As said by the supreme court of Arkansas in *Lange* v. *Burke,* 69 Ark. 85, 89 (61 S. W. 165), in holding, in a case where two corporations were practically controlled by the same stockholders and had had intimate business relations, including the employment of the same bookkeeper, that a claim of one corporation would be enforced against the insolvent estate of the other:

'' 'A corporation is an artificial being separate and distinct from its agents, officers, and stockholders. Its dealings with another corporation, although it may be composed in part of persons who own the majority of the stock in each company, and

may be managed by the same officers, if they be in good faith and free from fraud, stand upon the same basis, and affect it and the other corporation in the same manner and to the same extent, that they would if each had been composed of different stockholders and controlled by different officers.'"

It also quoted from an opinion of the sixth circuit court of appeals in *Richmond & I. Const. Co.* v. *Richmond, N. I. & B. R. Co.*, 15 C. C. A. 289, 292 (68 Fed. 105, 34 L. R. A. 625), as follows:

"The contract company was a legal corporation, wholly distinct and separate from the railroad company. The fact that the stockholders in each may have been the same persons does not operate to destroy the legal identity of either corporation. Neither does the fact that the one corporation exercised a controlling influence over the other, through the ownership of its stock or through the identity of stockholders, operate to make either agent of the other, or to merge the two corporations into one."

Recently in *Goodpastor* v. *Southern Insurance Agency, Inc.*, 293 Ky. 420 (169 S. W. [2d] 1), a question arose very similar to that presented in the instant case. The court stated:

"Appellant insists that Southern was formed by the stockholders of Commercial merely as a subterfuge and to circumvent § 298.190 KRS and allow Commercial to obtain a resident agent's license through Southern. We are asked to ignore what appellant terms the corporate fiction of Southern and to draw aside its veil as a corporate entity and to hold that it is but Commercial clothed in different raiment, citing *Louisville & N. R. Co.* v. *Carter*, 226 Ky. 561 (10 S. W. [2d] 1064); *Markell* v. *Hilpert*, 140 Fla. 842 (192 South. 392); *State, ex rel. Johnson & Higgins Co.*, v. *Safford*, 117 Ohio St. 576 (159 N. E. 829). An examination of these authorities shows

they hold that where one corporation is owned or so controlled by another as to make it but a sham or dummy for the former, the courts, where necessary to promote justice, will ignore the corporate fiction of the dummy and seize upon the real corporate entity. But here we have no such situation. Southern was separate and distinct from Commercial and was neither owned nor controlled by it. The fact that practically the same stockholders owned both corporations does not affect the corporate entity of the two companies, nor reduce Southern to the status of being a sham or dummy for Commercial. * * *

"In the instant case the majority of Southern's stock was not owned by Commercial but by the stockholders of the latter. Commercial was not attempting to enter Kentucky as a local insurance agent through a dummy corporation. Commercial had no connection with Southern although both were largely owned by the same stockholders. As stated above, it is quite a different situation where one corporation owns the majority of the stock of another from that where the majority of stock in both are owned by the same persons."

It is true that the court came to a different conclusion in *State, ex rel. Johnson & Higgins Co.,* v. *Safford,* 117 Ohio St. 576 (159 N. E. 829), and in *State, ex rel. Federal Union Ins. Co.,* v. *Warner,* 128 Ohio St. 261 (190 N. E. 575). The facts, however, in these cases are far different from those in the instant case.

There is no claim that plaintiff has done anything illegal or unlawful. If it does defendant has an adequate means of stopping it. We believe, to remove any question, the trust by which all the stockholders trusteed their stock, and which has been modified so as to enable them to withdraw the stock from the trust, should be dissolved and the stock turned over

to the stockholders. This should remove any suspicion of the grounds of which defendant is fearful. The license for plaintiff should be renewed on condition that the trust is promptly dissolved and the stock turned over free from such trust to the stockholders, all of which should be done within a reasonable length of time.

A writ of mandamus should be issued to this effect but without costs, a public question being involved.