**BLUE CROSS AND BLUE SHIELD OF MICHIGAN, a Michigan non-profit corporation, Plaintiff,**

v.

**Nancy BAERWALDT, Commissioner of Insurance for the State of Michigan, Defendant.**

No. G84–118CA5.

United States District Court, W.D. Michigan, S.D.

March 2, 1984.

Keefe A. Brooks, William M. Saxton, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., John H. Logie, Warner, Norcross & Judd, Grand Rapids, Mich., for plaintiff.

Deborah K. Canja, Asst. Atty. Gen., Lansing, Mich., for defendant.

John D. Pirich, Charles L. Sweeris, Michael J. Hodge, Miller, Canfield, Paddock & Stone, Lansing, Mich., for intervenor.

## OPINION ON MOTIONS

MILES, Chief Judge.

Blue Cross and Blue Shield of Michigan ("BCBSM" or "plaintiff") is a private, non-profit health care corporation existing under Mich.Comp.Laws Ann. § 550.301 *et seq.* and Mich.Comp.Laws Ann. § 550.501 *et seq.*, and which provides prepaid health care benefits to Michigan residents. Plaintiff brought this action under the Fourteenth Amendment to the United States

Constitution and 42 U.S.C. § 1983, seeking to enjoin defendant, the Commissioner of Insurance for the State of Michigan ("Commissioner" or "defendant"), from interfering with plaintiff's marketing practices with respect to its health care benefits.

For some time, BCBSM has engaged in "packaging," an arrangement whereby BCBSM's subsidiary corporation, or independent insurance agents, agree to offer a "package" of life and disability insurance benefits, and BCBSM health care benefits, to their customers. On September 9, 1983 the Commissioner wrote a letter to BCBSM directing BCBSM to cease and desist from certain marketing practices, including "packaging," stating that pursuant to the powers vested in her under Mich.Comp. Laws Ann. § 550.301 *et seq.* and Mich. Comp.Laws Ann. § 550.501 *et seq.* she had determined that BCBSM could not legally engage in the objectionable marketing practices.

Believing that defendant has "absolutely no regulatory authority" over BCBSM's marketing practices, and because the letter was issued "without any notice or an opportunity to be heard," BCBSM defied the Commissioner's order to cease and desist. On January 13, 1984, the Commissioner wrote a second letter to BCBSM, stating that she considered her first letter to be a "final order" which BCBSM could have contested pursuant to the appeals provisions of the Revised Judicature Act, Mich. Comp.Laws Ann. § 600.631. The Commissioner also expressed her intent to impose sanctions for violation of the order, pursuant to her statutory authority. That same day, January 13, 1984, the Commissioner sent a notice to Michigan life and health insurance agents informing them of her actions with respect to BCBSM and that such agents could be jeopardizing their Michigan insurance licenses by participating in the objectionable practices.

The question of the Commissioner's authority over BCBSM's marketing practices is complicated by the passage by the Michigan Legislature of P.A. 350 in 1980, the Nonprofit Health Care Corporation Reform Act. That Act specifically prohibits BCBSM from engaging in insurance transactions. However, in 1981 BCBSM filed suit in Ingham County Circuit Court challenging the constitutionality of the new statute, and on July 31, 1981 Ingham County Circuit Court Judge Jack Warren enjoined operation of the Act pending resolution of the underlying issues. The case is still pending.

On December 21, 1983, the Michigan Attorney General brought suit in *quo warranto* in the Ingham County Circuit Court seeking to oust BCBSM and its subsidiaries from the practice of packaging. That suit is now pending before Judge Warren.

Neither the provisions of Michigan's General Insurance Code nor those of the general business corporations code apply to BCBSM except as specifically authorized in BCBSM's enabling legislation, Mich.Comp. Laws Ann. § 550.302 and Mich.Comp.Laws Ann. § 550.501. Under the Nonprofit Corporations Act, Mich.Comp.Laws Ann. § 450.2301(1) and (5), BCBSM is required to utilize its assets and income in conformity with the purposes of the nonprofit corporation, and prohibits a nonprofit charitable corporation from utilizing its assets for non-charitable purposes. Among BCBSM's purposes, as set forth in the Restated Articles of Incorporation, is the directive to carry on all businesses in connection with its enabling statutes, *not violative of the laws of the State of Michigan.*

Presently before the Court are plaintiff's petition for a preliminary injunction and defendant's motions to dismiss for lack of subject matter jurisdiction, for failure to state a claim upon which relief may be granted, and to dissolve the temporary restraining order issued by Judge Philip Pratt of the U.S. District Court for the Eastern District of Michigan. Because the Court finds the motions to dismiss dispositive, they will be addressed first.

 Defendant first moves to dismiss for lack of subject matter jurisdiction, relying on *Pennhurst State School and Hospital v. Halderman,* —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). *Pennhurst*

holds that the Eleventh Amendment bars a federal court from ordering state officials to conform their conduct to state law. Although the Court agrees that *Pennhurst* requires dismissal of the action, it is not because the Court lacks subject matter jurisdiction. The essential question for determining subject matter jurisdiction under 42 U.S.C. § 1983 is whether the complaint alleges facts sufficient to indicate that the defendant's conduct constitutes "state action" within the meaning of the Civil Rights Acts. *Brown v. Strickler*, 422 F.2d 1000 (6th Cir.1970). Here, there is no dispute that defendant's actions in ordering BCBSM to cease and desist its marketing practices constitute "state action." Thus, the Court has subject matter jurisdiction over this claim.

■ The next inquiry is posed by defendant's motion to dismiss for failure to state a claim. *Id.* In ruling on a motion to dismiss, the factual allegations must be accepted as true, *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972), and should be construed favorably to the pleader, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ There are two essential elements to a section 1983 action: (1) whether the conduct complained of was committed by a person acting under color of state law; (2) whether this conduct deprives a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 1908, 68 L.Ed.2d 420, 101 S.Ct. 1908 (1981). As noted, there is no dispute over the first element. With respect to the second element, section 1983 does not create a remedy for *every* wrong committed under color of state law, but only those rights secured by federal law and the federal Constitution. Thus, the essential inquiry here is whether plaintiff has alleged deprivation of a federally-protected right. *Ohio Inns, Inc. v. Nye*, 542 F.2d 673 (6th Cir.1976), *cert. denied*, 430 U.S. 946, 97 S.Ct. 1583, 51 L.Ed.2d 794.

Plaintiff alleges that the Commissioner's directives and threats of sanctions are depriving it of Constitutionally-protected liberty and property interests without due process of law. (Complaint, paragraph 17). BCBSM asserts a "property right in the business derived from said activity and the liberty to determine the manner in which it will conduct its business affairs."

■ The "property interests" protected under section 1983 are created and defined by state law. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Although BCBSM holds a "unique position" as a quasi-public, tax-exempt institution, *Westland Convalescent Center v. Blue Cross & Blue Shield of Michigan*, 414 Mich. 247, 324 N.W.2d 851, 855 (Mich. 1982), the Court believes its statutorily-created rights to conduct business rise to the level of "property interests" protected by the Constitution. As with any corporation, BCBSM's "property" rights to conduct business are subject to legislative alteration, *Levant v. Kowal*, 350 Mich. 232, 86 N.W.2d 336 (1957); *Stott v. Stott Realty Co.*, 288 Mich. 35, 284 N.W. 635 (1939), so long as the legislative action is rationally related to the general welfare and due process is observed, *Ohio Inns, Inc. v. Nye, supra; Stratford v. State-House, Inc.*, 542 F.Supp. 1008 (E.D.Ky.1982). BCBSM has identified no particular "liberty" interest which is protected, beyond a general allegation of a "due process right to engage in any business not proscribed by law." (Plaintiff's Response to Defendant's Motion to Dismiss, p. 18). This assertion certainly overstates BCBSM's protected "liberty" rights. Neither *Green v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959) nor *People v. Victor*, 287 Mich. 506, 512, 283 N.W. 666 (1939), cited by plaintiff, support the claim that BCBSM, a statutory creation whose powers and purposes are set forth in its own particular enabling legislation, may engage in any business whatsoever not proscribed by law. BCBSM's right to conduct business derives solely from its enabling legislation. In this case, the Michigan Legislature has at-

tempted to alter the terms under which BCBSM conducts business by enacting 1980 P.A. 350. The constitutionality of that Act is being challenged in state court and is not now at issue.

Having determined that BCBSM does enjoy some "property" right in the conduct of its business, the next inquiry is whether the allegations sufficiently show deprivation of such rights without due process of law.

Plaintiff claims that the Commissioner has acted without due process in "stat[ing] her intention to levy legal sanctions and penalties against BCBSM without any prior state proceeding in the premises, judicial or administrative." (Plaintiff's Brief in Opposition to Motion to Dismiss, p. 11). Thus, plaintiff claims a federal right to the uninterrupted continuation of its business *except after* notice and opportunity to be heard.

"Due process" fundamentally requires some kind of hearing and an opportunity to be heard at some time before the state finally deprives a person of his property interests, although *predeprivation* hearings are not always required. *Parratt v. Taylor, supra.* In some cases, *postdeprivation* remedies may satisfy procedural due process, for example, where quick state action is necessary to protect the public against economic harm. *Id.* 101 S.Ct. at 1914–1915; *Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947).

Under Mich.Comp.Laws Ann. § 600.631, plaintiff has the right to appeal "any order, decision, or opinion of any state board, commission, or agency..." Further, Michigan General Court Rules 1963 706.1 and 701.8 provide for an automatic stay of proceedings to enforce such agency orders. Clearly, meaningful state court remedies are, or were, available to plaintiff to prevent arbitrary and unlawful (under state law) action by the Commissioner. Further, the full panoply of injunctive relief is available to plaintiff in the state courts. In effect, these remedies are ex-

actly what plaintiff requests, *i.e.* some form of *predeprivation* hearing. The Court believes the requirements of due process have been, or would be, satisfied by such available procedures. Thus, plaintiff has failed to state a claim. The Court is not persuaded, as BCBSM contends, that the rationale of *Parratt v. Taylor* is limited to cases seeking money damages instead of prospective injunctive relief, nor that *Parratt* is limited to *negligent* deprivations. See *e.g. Barnier v. Szentmiklosi,* 565 F.Supp. 869 (E.D.Mich.1983).

Neither *Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) nor *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), relied on by plaintiff, compels a different result. *Patsy* held that a section 1983 claimant need not exhaust state administrative procedures before seeking redress in federal court. However, as Judge Joiner noted, in *Barnier v. Szentmiklosi, supra,* at p. 881, *Patsy* concerns the scope of the section 1983 damage *remedy,* not, as does *Parratt,* the contours of the constitutional *right* itself which section 1983 protects:

> [W]here the state is prepared to adequately remedy the loss of an interest protected by the Fourteenth Amendment, no Constitutional deprivation is alleged. In other words, if there is no lack of due process, there is no cause of action under section 1983 for deprivation of due process.

Also *see Vicory v. Walton,* 721 F.2d 1062, n. 3 (6th Cir.1983).

*Logan* held that a discharged employee could not be deprived of his cause of action for discrimination under a state's fair employment practices act because a state official inadvertently failed to comply with statutorily mandated procedures. There, the claimant had brought his claim of unlawful discrimination within the required time limit of 120 days; the state agency did not, as statutorily mandated, convene a fact-finding conference within 120 days. The state supreme court held that the claimant's cause of action had been termi-

nated. Reversing, the United States Supreme Court noted that the claimant's cause of action was a species of "property" protected by the U.S. Constitution which could not be destroyed by the jurisdictional language of the state statute without an opportunity for a meaningful hearing. Postdeprivation tort remedies were found speculative and inadequate, as they could not provide for the claimant's reinstatement.

Clearly, *Logan* is factually distinguishable, as plaintiff has not even presented a claim for relief from the Commissioner's recent order to available state tribunals for consideration. The Court itself distinguished cases where the putative claimant himself fails to comply with reasonable procedural requirements:

> To put it as plainly as possible, the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement.[7]

[7] This is not to suggest, of course, that the State must consider the merits of the claim when the *claimant* fails to comply with a reasonable procedural requirement, or fails to file a timely charge.

*Id.* 102 S.Ct. at 1156–1157.

It is necessary to address BCBSM's contentions that a federal claim is stated because the Commissioner is purportedly acting without authority of any kind in directing BCBSM to cease and desist its marketing practices. Plaintiff contends that the Commissioner has no regulatory authority over the manner in which BCBSM markets its health care benefits, nor has the power to order BCBSM to cease and desist the practices at issue. Defendant responds that sovereign immunity bars this Court from directing the Commissioner's actions.

The principle of sovereign immunity as established in the Eleventh Amendment prohibits federal courts from entertaining suits against a sovereign state of the Union brought by citizens of a state. The Eleventh Amendment also bars suits against state officials when "the state is the real, substantial party in interest."

*Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). An important exception to this general rule was expounded in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441 (1908), which held that a suit challenging the constitutionality of a state official's action is not one against the state. However, *Young* is to be narrowly construed where the purpose of the exception—the promotion of the supremacy of federal law—would not be served. *Pennhurst State School & Hospital v. Halderman, supra* —— U.S. at —— - ——, 104 S.Ct. at 905–909. A mere allegation that a state official has acted contrary to statute does not override sovereign immunity, *Id.* at ——, 104 S.Ct. at 914, *citing Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 S.Ct. 1628 (1949), at least so long as the state official is acting within the scope of his official responsibility.

Relying on *Blue Cross v. Insurance Commissioner,* 403 Mich. 399, 270 N.W.2d 845 (1978), plaintiff claims that the Commissioner has no authority to regulate BCBSM's marketing practices. That case held that the Commissioner had no authority to compel BCBSM to implement specific cost containment measures, although the Commissioner could consider waste in determining whether requested rate increases were fair and reasonable.

Although *Blue Cross v. Commissioner* noted that the Commissioner's regulatory powers derive solely from the special enabling legislation creating BCBSM, *Id.* 270 N.W.2d at 852, the Michigan Supreme Court also noted the Commissioner's continuing authority to combat fraud, as contained in Mich.Comp.Laws Ann. § 550.311:

> The said commissioner of insurance shall have power and authority, at any time to revoke, after reasonable notice and hearing, any certificate, order or consent made by him to the said corporation, to proscribe applications for membership, upon being satisfied that the further solicitation of subscribers will work a fraud upon the persons so solicited, and he

shall have authority to make such investigation from time to time as he may deem best, and grant hearings to such incorporators in their relation thereto. Similar language is contained in Mich.Comp.Laws Ann. § 550.506, omitting the requirement of a prior hearing. The Court believes that the Commissioner's directives to BCBSM are quite plausibly within the scope of her authority to combat fraud, within her statutory authority under other provisions of BCBSM's enabling legislation, and also within her authority to regulate BCBSM's subsidiary and independent insurance agents. See *e.g. Washington Agency v. Insurance Commissioner*, 309 Mich. 683, 16 N.W.2d 121 (1944). *Pennhurst* prohibits this Court from engaging in an exacting analysis of state law to ascertain the *specific* contours of the Commissioner's authority. Such an inquiry would necessarily involve the Court in an exegesis of 1939 P.A. 108 and 109, and 1980 P.A. 350. The question of the Commissioner's particular authority over BCBSM's marketing practices is now being considered in the Ingham County *quo warranto* suit. As the *Pennhurst* Court noted, the Eleventh Amendment bar of sovereign immunity is not removed simply because the state official erroneously exercises his authority or errs in the interpretation of his legal duties, so long as the relief sought effectively runs against the State. Such is the case here. An injunction against the Commissioner would effectively determine the extent of her enforcement power under state law to regulate the health-care and insurance industry by necessarily determining that she acted without any authority here, which is by no means clear; such an order would "run against the sovereign." Thus, *Pennhurst* compels the Court to find that sovereign immunity bars plaintiff from seeking relief in this forum. As noted previously, adequate state procedures exist to ensure that plaintiff's federal due process rights are fully observed. Defendant's motions to dismiss for failure to state a claim and to dissolve the temporary restraining order are GRANTED.

Having failed to show a likelihood of success on the merits, plaintiff has failed to show one of the prerequisites for the issuance of preliminary injunctive relief. Plaintiff's motion for a preliminary injunction is, therefore, DENIED. The case is DISMISSED.

IT IS SO ORDERED.