Day, J.
 

 A determination of the question presented requires a consideration of Sections 644, 644-1, and 644-2, General Code. Briefly stated, these provisions may be summarized as follows:
 

 Under Section 644, no person may be licensed to act as an insurance agent unless a resident of this state. Section 644-1 makes provision that no solicitor’s license shall be issued except to natural persons, resident of the state. Section 644-2 limits the issuance of a foreign broker’s license in this state to a natural person resident of another state to do in .his own state an insurance business on Ohio property. That is to say, a broker may write no business and transact no insurance business within the borders of the state of Ohio.
 

 The petition avers that the refusal of the respondent to issue the license prayed for is based on
 
 *579
 
 the single fact that a majority of the stock of the relator company, an Ohio corporation, is owned and controlled by a foreign corporation engaged in insurance business. This then presents two questions : (1) Whether under Section 644 the superintendent of insurance may deny to relator corporation a license on the ground that the majority of its stock is owned by a foreign corporation; and (2) if Section 644 permits the superintendent of insurance to deny to relator corporation such license on the ground aforesaid, whether such section is in violation of the Constitution of the United States and the Constitution of Ohio.
 

 That the Ohio resident agent’s law is not unconstitutional is sustained by
 
 La Tourette
 
 v.
 
 McMaster,
 
 248 U. S., 465, 49 S. Ct., 160, 63 L. Ed., 362, and
 
 Palmetto Fire Ins. Co.
 
 v.
 
 Conn,
 
 272 U. S., 295, 47 S. Ct., 88, 71 L. Ed., 243. In fact, we are informed by the brief of counsel for relator that the constitutionality of Section 644, General Code, is not questioned, but that the construction thereof by the superintendent of insurance, respondent herein, is challenged.
 

 The petition herein recites, among other things :
 

 “Said superintendent found that a majority of the capital of relator had been contributed, and stock certificates issued accordingly, by a certain foreign corporation, known as Marsh & McLennan, Incorporated, engaged in the business of insurance brokers at New York, Chicago, and elsewhere; that because said foreign broker’s corporation owned a majority of the stock of relator, and for no other reason, said superintendent of insurance refused and still refuses to license relator as such local
 
 *580
 
 agent, and further says that he will not so license it.”
 

 The record further discloses that said Marsh & McLennan, Incorporated, engaged in the business of brokerage insurance, has a license from the insurance department of Ohio as a foreign insurance broker for Ohio for the current year, but that such license as a foreign insurance broker would be surrendered upon the awarding of a license to the relator as a local agent, and that, thereupon, said Marsh & McLennan, Incorporated, will return said foreign broker’s license and not in any wise engage as foreign broker for Ohio business.
 

 It is therefore plain that the purpose of the securing of a license by the relator company is to enable Marsh & McLennan, Incorporated, owner of a foreign insurance broker’s license and owner of a majority of the stock of relator, to circumvent the statute of Ohio which prevents such license being secured by other than a resident of the state of Ohio.
 

 ] To state the proposition somewhat differently, may a domestic corporation, organized for the purpose of soliciting insurance other than life, incorporated under the laws of this state, be denied a license to do business in this state merely because jhe bulk of its stock is owned by a foreign corporation engaged in the insurance brokerage business, which latter corporation is not enabled to secure a license to act in this state by reason of Section 644, General Code? While it is true that one corporation may own and control the stock of another corporation
 
 (Toledo Traction, Light & Power Co.
 
 v.
 
 Smith
 
 [D. C.], 205 F., 643;
 
 Bigelow
 
 v.
 
 Calumet & Hecla Min. Co.,
 
 [C. C.] 167 F., 704;
 
 Kardo Co.
 
 v.
 
 Adams,
 
 [C. C. A.] 231 F., 950; Section
 
 *581
 
 8623-8, General Code, effective June 16, 1927), yet courts of equity do not permit corporate forms to be used for injury or wrongdoing. “The doctrine of corporate entity is not so sacred that a court of equity, looking through forms to the substance of things, may not in a proper case ignore it to preserve the rights of innocent parties or to circumvent fraud.”
 
 In re Rieger, Kapner & Altmark,
 
 (D. C.), 157 F., 609. In 14 Corpus Juris, 61, it is said:
 

 “Thus it has repeatedly been held that the courts, both at law and in equity, will disregard the fiction of corporate entity apart from the members of the corporation when it is attempted to be used as a means of accomplishing a fraud or an illegal act.”
 
 First Nat. Bank of Chicago
 
 v.
 
 Trebein Co.,
 
 59 Ohio St., 316, 52 N. E., 834;
 
 Brundred
 
 v.
 
 Rice,
 
 49 Ohio St., 640, 32 N. E., 169, 34 Am. St. Rep., 589;
 
 State
 
 v.
 
 Standard Oil Co.,
 
 49 Ohio St., 137, 177, 30 N. E., 279, 15 L. R. A., 145, 34 Am. St. Rep., 541.
 

 The case of
 
 Palmetto Fire Ins. Co.
 
 v.
 
 Conn, supra,
 
 recognizes the right of the state to tax a foreign corporation seeking to do an insurance business in Ohio without paying a resident license, under the guise of including the premium for such insurance as a part of the purchase price of a commodity (an automobile), the court saying, at page 305 (47 S. Ct., 89) :
 

 “Whatever technical form may be given to the reasoning, the substance is that by acts done in Ohio the purchaser obtains for himself the advantage of insurance that before that moment did not exist. * * * It would be extravagant to say that the state’s general power to deny to the plaintiff the right to enter or remain within it for business unless it paid for these transactions as a
 
 *582
 
 part of the price, must be denied upon constitutional grounds.”
 

 The principle of denying the right to do by indirection what cannot be done by direct method is thus clearly recognized. If a non-resident insurance company cannot write insurance in Ohio without a resident license, how can this desired result be acquired by corning’into the state in the guise of an owner of a controlling interest in a domestic corporation, thus seeking to circumvent the statute relative to resident licenses?
 

 The interpretation of a given law by administrative departments, if long continued, has been recognized in this state:
 
 Industrial Commission of Ohio
 
 v.
 
 Brown,
 
 92 Ohio St., 309, 311, 110 N. E., 744, L. R. A., 1916B, 1277;
 
 State, ex rel.,
 
 v.
 
 Smith,
 
 71 Ohio St., 13, 40, 72 N. “E., 300;
 
 United States
 
 v.
 
 Johnston,
 
 124 U. S., 236, 8 S. Ct., 446, 31 L. Ed., 389; 36 Cyc., 1140; 25 Ruling Case Law, 1043.
 

 Sections 644, 644-1, and 644-2, G-eneral Code, prior to the amendment of March 14,1927 (112 Ohio Laws, p. 92), have received interpretation of the insurance department of this state; and, under facts so similar as to make the situation almost parallel to the instant case, a license was refused to a holder of a foreign broker’s license where such license was sought by a corporation of Ohio dominated by the holder of such foreign broker’s license. We think the interpretation then placed upon the statutes was correct and that the same interpretation should now prevail, in spite of the amendment of Section 644-2.
 

 The case of
 
 Hanover Fire Ins. Co.
 
 v.
 
 Harding,
 
 272 U. S., 494, 47 S. Ct., 179, 71 L. Ed., 372, 49 A. L. R., 713, cited by relator, and upon which
 
 State ex rel. Woodmen Accident Co.
 
 v.
 
 Conn, Superin
 
 
 *583
 

 tendent of Insurance,
 
 116 Ohio St., 127, 156 N. E., 114, was decided, relates to the unreasonable classification of domestic and foreign corporations engaged in the same business, and is noc applicable to a case involving the use of a domestic corporation’s entity for the purpose of evading a state law, which is the crucial question in the case at bar.
 

 The fact that the relator was incorporated in Ohio prior to the passage of the resident agent’s law, Section 644, General Code, is immaterial in view of the fact that the license is an annual privilege granted by the state, dependent upon the condition of the applicant at each annual period. The rights, therefore, of relator under Section 644, General Code, relate to these annual periods and do not depend upon the date of relator’s original incorporation.
 

 It is our conclusion that the relator company is but the
 
 alter ego
 
 of a nonresident insurance broker corporation desiring to write insurance in Ohio, but unable to obtain a resident license, and that the course pursued by it is but an attempt to do by indirection that which cannot be accomplished by direct and legal methods. Entertaining this view, the demurrer of the respondent to the petition of the relator is sustained.
 

 The same principles control in the case of
 
 State ex rel. Johnson & Higgins Co.
 
 v.
 
 William G. Safford, Superintendent of Insurance.,
 
 No. 20769, and the same entry is made in that case.
 

 Demurrer sustained.
 

 Marshall, C. J., Allen, Kinkade, Robinson, Jones and Matthias, JJ., concur.