Associated Adjusters of Ohio, Inc., Appellant, v. Ohio Department of Insurance et al., Appellees.

(No. 76-1086—Decided June 8, 1977.)

Messrs. *Fontana, Ward, Kaps & Perry* and *Mr. David S. Bloomfield*, for appellant.

*Mr. William J. Brown*, attorney general, *Mr. Ronald J. Corn* and *Mr. Donald P. Muenz*, for appellee Dept. of Ins.

Messrs. *Guren, Merritt, Sogg & Cohen, Mr. David A. Schaefer, Mr. Wilton S. Sogg* and *Mr. Michael J. Peterman*, for intervenor appellees.

*Per Curiam.* R. C. Chapter 3951 establishes the authority under which the appellee, on behalf of the state of Ohio, licenses and regulates public insurance adjusters. R. C. 3951.02[1] provides that no person or corporation may act as

[1]R. C. 3951.02 reads, in part, as follows:

"No person, firm, association, partnership or corporation shall act within this state as a public insurance adjuster, or receive, directly or indirectly, compensation for services rendered in the adjustment of any claim or claims under the types of insurance policies set forth in Section 3951.01 of the Revised Code, unless he, or it, is the holder of a certificate of authority to act as a public insurance adjuster, issued pursuant to Sections 3951.01 to 3951.09, inclusive, of the Revised Code."

a public insurance adjuster without first having obtained a certificate of authority to act in such capacity from the Superintendent of Insurance (superintendent). In addition, R. C. 3951.06 (D)[2] directs that no certificate of authority be issued unless the applicant is a resident of this state.

Appellant, Associated Adjusters, presents several constitutional challenges to the aforementioned residency requirement. At the outset, however, appellant cites a stipulation entered into by the parties, wherein it is stated that appellant's application was denied because of an unwritten and unpromulgated policy within the Department of Insurance. This policy requires that in order to be eligible for a certificate all the officers and directors of a corporate applicant must be residents of Ohio.

It is appellant's position that since R. C. 3951.07 specifies that all decisions of the superintendent are subject to the provisions of R. C. 119.01 through 119.13, and because in this instance the superintendent failed to comply with the statutory procedure for the adoption of agency rules, as set out in R. C. 119.03,[3] the contested policy is invalid un-

---

[2] R. C. 3951.06 (D) states, in pertinent part:

"(D) No certificate of authority shall be issued or renewed unless, the applicant is a resident of the state * * *."

[3] R. C. 119.03 (133 Ohio Laws 1515, 1520, Pt. II) provided, in part, as follows:

"In the adoption, amendment, or rescission of any rule an agency shall comply with the following procedure:

"(A) Reasonable public notice shall be given at least thirty days prior to the date set for a hearing, in such manner and form and for such length of time as the agency determines and shall include:

"(1) A statement of the agency's intention to consider adopting, amending, or rescinding a rule;

"(2) A synopsis of the proposed rule, amendment, or rule to be rescinded or a general statement of the subject matter to which such proposed rule relates;

"(3) The date, time, and place of a hearing on said proposed action. In addition to such public notice the agency may give whatever other notice it deems necessary. Each agency shall adopt a rule setting forth in detail the method which such agency shall follow in giving public notice as to the adoption, amendment, or rescission of rules.

"(B) The full text of the proposed rule, amendment, or rule to be rescinded shall be filed with the Secretary of State at least thirty days

der R. C. 119.02,[4] and appellant's application was therefore unlawfully denied.

This argument must fail, however, when one views the findings of fact and conclusions of law presented by the hearing officer. Because it is undisputed that *none* of appellant's officers or directors reside in Ohio, the hearing officer was correct in basing his recommendation primarily

---

prior to the date set for the hearing and shall be available at the office of the agency in printed or other legible form without charge to any person affected by such proposal. Failure to furnish such text to any person requesting it shall not invalidate any action of the agency in connection therewith.

"(C) On the date and at the time and place designated in the notice, the agency shall conduct a public hearing at which any person affected by the proposed action of the agency may appear and be heard in person, by his attorney, or both, may present his position, arguments or contentions, orally or in writing, offer and examine witnesses, and present evidence tending to show that the proposed rule, amendment, or rescission, if adopted or effectuated, will be unreasonable or unlawful.

"At such hearing a stenographic record of the testimony and rulings on the admissibility shall be made at the expense of the agency.

"In any hearing under this section the agency may administer oaths or affirmations.

"The agency shall pass upon the admissibility of evidence, but the person affected may at the time make objection to the ruling of the agency, and if the agency refuses to admit evidence the person offering the same shall make a proffer thereof, and such proffer shall be made a part of the record of such hearing.

"(D) After complying with divisions (A), (B), and (C) of this section, the agency may issue an order adopting such proposed rule, amendment, or rescission, or revision thereof, consistent with the public notice and at that time shall designate the effective date thereof which shall not be earlier than the tenth day after said rule, amendment or rescission has been filed in its final form with the Secretary of State as provided in Section 119.04 of the Revised Code. No rule shall be amended except by a new rule which shall contain the entire rule as amended, and shall repeal the rule amended."

'R. C. 119.02 provides:

"Every agency authorized by law to adopt, amend, or rescind rules shall comply with the procedure prescribed in Sections 119.01 to 119.13, inclusive, of the Revised Code, for the adoption, amendment, or rescission of rules. Unless otherwise specifically provided by law, the failure of any agency to comply with such procedure shall invalidate any rule or amendment adopted, or the rescission of any rule."

upon the holding in *State, ex rel. Johnson & Higgins Co., v. Safford* (1927), 117 Ohio St. 576.

In *Safford* the relator was a duly incorporated Ohio company, organized to serve as a local agent for five insurance companies. At the time, G. C. 644 provided that no license to act as an insurance agent should be issued to persons not residing in this state. Because a majority of its stock was owned by a nonresident corporate insurance broker, the Superintendent of Insurance refused to issue to relator an agency license, thereby prompting relator to bring an original action in mandamus.

In upholding the action of the superintendent, the court in *Safford* recognized that the course pursued by relator was merely an attempt to do by indirection what could not be accomplished by direct and legal methods. Accordingly, the court stated the following in paragraph one of the syllabus:

"In the furtherance of justice, the fiction of a corporate entity may be disregarded where the corporation is so controlled and its affairs so conducted as to make it merely an instrumentality for the purpose of evading and circumventing a state law."

We believe that this reasoning applies with equal force to the situation present herein. It is readily apparent that the individual applicants, Shipper and Phillips, have attempted to circumvent the statutory residency requirement by incorporating their enterprise in Ohio. Therefore, on the basis of the ruling in *Safford,* appellant's application for a certificate of authority was properly denied. Because the hearing officer need not have applied the unwritten departmental policy in order to reach the recommendation which he did, appellant's first argument is rejected.

Appellant also contends that the residency requirement set forth in R. C. 3951.06(D) denies it the equal protection of the law, as guaranteed by Section 2, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

Traditionally, equal protection issues have been ana-

lyzed by using a two-step approach. A court must first determine what burden of justification the classification thereby created must meet, by looking to the nature of the classification and the individual interests affected. *Memorial Hospital* v. *Maricopa County* (1974), 415 U. S. 250, 253. Under the usual standard, equal protection is denied only if the classification is without any reasonable basis. *Lindsley* v. *Natural Carbonic Gas Co.* (1911), 220 U. S. 61, 78; *State, ex rel. Clark,* v. *Brown* (1965), 1 Ohio St. 2d 121. If, however, the classification touches on a fundamental right, its constitutionality must be judged by the stricter standard of whether it promotes a compelling state interest. *Shapiro* v. *Thompson* (1969), 394 U. S. 618, 638.

Appellant suggests that the statutory residency requirement *sub judice* impairs its right of interstate travel, which right has repeatedly been recognized as a fundamental constitutional freedom.[5] *Shapiro* v. *Thompson, supra*; *Dunn* v. *Blumstein* (1972), 405 U. S. 330. Appellant's reliance upon *Shapiro* and its progeny is, however, misplaced.[6]

In *Shapiro* the United States Supreme Court was concerned with more than mere movement; rather, it addressed the right "to migrate, resettle, find a new job, and start a

---

[5] In commenting upon the genesis of the right to travel, Mr. Justice Stewart, in *United States* v. *Guest* (1966), 383 U. S. 745, stated the following at pages 757-758:

"The constitutional right to travel from one State to another * * * occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized. * * *

"* * * [The] right finds no explicit mention in the Constitution. The reason, it has been suggested, is that a right so elementary was conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created. In any event, freedom to travel throughout the United States has long been recognized as a basic right under the Constitution." (Footnote omitted.)

[6] Although none of the parties to this appeal have made the observation, it would appear to this court that all of the right to travel cases have at least two common elements which are lacking here, viz., all involve actions by natural, as opposed to corporate, persons, and all are concerned with the deprivation of very basic and fundamentally necessary governmental benefits or privileges.

new life." *Shapiro,* at page 629. The court at page 636, explained that "* * * [t]he residence requirement and the one-year waiting-period requirement are distinct and independent prerequisites * * *" for receipt of welfare benefits, and only the latter was held to be unconstitutional. Three years later the court, in *Dunn* v. *Blumstein, supra,* invalidated a durational residence requirement for voter registration on the basis of *Shapiro,* but cautioned that the decision was not intended to "* * * cast doubt on the validity of appropriately defined and uniformly applied *bona fide* residence requirements." *Dunn,* at page 342, fn. 13. Recently, in *McCarthy* v. *Philadelphia Civil Service Comm.* (1976), 424 U. S. 645, the court reaffirmed the validity of the important differentiation between a requirement of continuing residency and a requirement of prior residency of a given duration.

We think it apparent that the non-durational residency requirement set out in R. C. 3951.06(D) does not penalize the right to interstate travel, since it does not mandate that the applicant for a certificate be an Ohio resident for a fixed period of time, thus depriving the applicant of the opportunity to earn a livelihood during that waiting period. Simple, *bona fide* residence in this state satisfies the express terms of the statute.

Having established that no fundamental right is involved, it is clear that only a rational basis need be shown in order to meet appellant's equal protection challenge. *Lindsley* v. *Natural Carbonic Gas Co., supra; State, ex rel. Clark,* v. *Brown, supra.* First, the classification itself is rational. The General Assembly has drawn a distinction between all nonresident public insurance adjusters and all resident public insurance adjusters. Second, the classification is rationally related to the legislative purpose behind the statute.

One general objective of R. C. 3951.06(D) is to assure the accessibility of public insurance adjusters to their potential clients. It is elementary that the proper adjustment of insurance claims requires that an adjuster have ready access to the scene of the loss, to witnesses, to local law en-

forcement officials, to local appraisers, and to the insured.

Another general objective of the statutory residency requirement is to ensure the feasibility of regulation. A perusal of R. C. Chapter 3951 discloses a clearly defined legislative intent to safeguard the interests of the public. R. C. Chapter 3951 requires, *inter alia*, the examination of applicants, the posting of a $1,000 bond, and the suspension or revocation of a certificate of authority if it is shown that a licensed adjuster has engaged in fraudulent practices, obtained from a claimant the assignment of a claim, made a material misstatement in the application for a certificate, or otherwise demonstrated incompetency or untrustworthiness.

There is credible testimony in the record of the administrative hearing as to the substantial difficulties which would be encountered by the superintendent if it became necessary to regulate nonresident public insurance adjusters. Since we hold that the statutory classification is itself rational, and that the classification is rationally related to legitimate legislative objectives, appellant's second argument is without merit.

Appellant's only remaining argument is that the residency requirement within R. C. 3951.06(D) contravenes the privileges and immunities clause set forth in the Fourteenth Amendment to the United States Constitution.

Section 1 of the Fourteenth Amendment to the United States Constitution reads, in pertient part, as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States * * *."

As we noted above, the sole appellant herein is the corporate applicant, Associated Adjusters, the individual applicants, Shipper and Phillips, having failed to perfect their appeal to this court. It is now well established that a corporation is neither a citizen of a state nor of the United States, and thus not within the protection of the privileges

and immunities clauses of Section 2, Article IV of the United States Constitution and the Fourteenth Amendment to the United States Constitution. *Asbury Hospital* v. *Cass County* (1945), 326 U. S. 207, 210-211; *Paul* v. *Virginia* (1869), 75 U. S. 168, 177. See, generally, 16 American Jurisprudence 2d, Constitutional Law, Section 471. Appellant's final argument must, therefore, be rejected.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, STERN, P. BROWN, SWEENEY and LOCHER, JJ., concur.

STERN, J., retired, assigned to active duty under authority of Section 6 (C), Article IV, Constitution, sitting for W. BROWN, J.