### Independent Insurance Agents of Ohio, Inc.
### v.
### Fabe, Superintendent
*[Cite as 5 AOA 306]*

*Case No. 89AP-874*
*Franklin County, (10th)*
*Decided August 30, 1990*

*Philip J. Fulton, Agee, Clymer, Morgan & Fulton Co., L.P.A.; Jonathan B. Sallet and Jay L. Alexander, Miller, Cassidy, Larroca & Lewin, for The*

*Independent Insurance Agents of Ohio, Inc., and Thomas H. Hardy, Appellees.*

*Suzanne K. Richards and James A. Yano, Vorys, Sater, Seymour and Pease, for The Ohio Savings and Loan League, Appellant.*

*John W. Zeiger and Darrell L. Dreher, Jones, Day, Reavis & Pogue, for The Ohio Consumer Finance Association, Appellant.*

*Jeffrey D. Quayle, for amicus curiae Ohio Bankers Association.*

*Anthony J. Celebrezze, Jr., Attorney General, and Joseph D. Emanuel, for amicus curiae Anthony J. Celebrezze, Jr., Attorney General of Ohio.*

*Craig D. Leister, Means, Bichimer, Burkholder & Baker Co., L.P.A., for amicus curiae The Ohio Association of Life Underwriters, Inc.*

*Michael J. Petrucci and Kelly M. Morgan, for amicus curiae The Professional Insurance Agents of Ohio, Inc.*

REILLY, P.J.

Plaintiff, The Independent Insurance Agents of Ohio, Inc., filed a complaint against defendants, The Honorable George Fabe, Superintendent of Insurance, and the Ohio Department of Insurance, seeking a declaratory judgment that R.C. 3905.01 and 3905.04 prohibit the issuance of insurance licenses to applicants who principally intend to sell insurance to the customers of non-insurance affiliates. Subsequently, the motions of the Ohio Savings and Loan League and the Ohio Consumer Finance Association to intervene as defendants were granted by the trial court. While the case was pending, the superintendent of insurance issued Bulletin 89-1, wherein the department adopted the Attorney General's opinion that R.C. 3905.04 did not prohibit the licensing of applicants who principally intend to place insurance on property for which the applicant's affiliate or subsidiary is an agent, custodian, vendor, bailee, trustee or payee.

The matter was then referred to a referee who held a hearing and issued a report recommending that the court declare the superintendent's interpretation of R.C. 3905.,01 and 3905.04 as contained in Bulletin 89-1 to be error and contrary to law. The trial court adopted the referee's report and entered final judgment in favor of plaintiffs.

Defendants appeal, asserting the following assignments of error:

"I. The trial court erred in holding that the Ohio property and casualty insurance licensing statutes, R.C. 3905.01 and 3905.04, required the Superintendent of Insurance to add 'affiliates' and 'subsidiaries' to the restricted categories of property relationships described in those statutes.

"II. The trial court erred in holding that the principal purpose requirement of the Ohio property and casualty insurance licensing statutes, R.C. 3905.01 and 3905.04, must be judicially suspended for applicants that are affiliates or subsidiaries of financial institutions."

The superintendent has chosen not to appeal the trial court's judgment and is thus not a party to this appeal. The court has also received and considered the briefs of the Ohio Attorney General, *amicus curiae,* for defendants, as well as the Ohio Association of Life Underwriters, Inc., and the Professional Insurance Agents Association of Ohio, Inc., *amicus curiae,* for plaintiffs.

The resolution of this case must be based on the construction and application of R.C. Chapter 3905, which regulates the licensing of insurance agents, solicitors and foreign brokers. The question presented herein is whether banks and other financial or lending institutions may be licensed as insurance agents.

Plaintiffs' original complaint did not specifically refer to banks or financial institutions. However, both of the remaining defendants represent financial institutions and the trial court's judgment entry particularly applied to banks and other financial or lending institutions. Consequently, this court's opinion, while generally applicable to other so-called controlled businesses, will specifically address the applicability of R.C. Chapter 3905 to financial institutions.

R.C. 3905.01 sets forth the requirements an applicant must meet to be issued an insurance agent's license. An insurance agent must be appointed by an insurance company authorized to do business in this state. An agent may be either a natural person or a corporation. R.C. 3901.19. Defendants represent member corporations which have previously applied or intend to apply for agents' licenses. R.C. 3905.02 determines the issuance of solicitors' licenses. A solicitor is a natural person employed by an insurance agency to solicit policies and contracts of insurance. The licensing of life insurance

agents is excluded from the scope of R.C. 3905.01 and is governed instead by R.C. 3505.18.

R.C. 3905.04 concerns both applications for and the revocation of licenses to sell insurance of any kind, other than life insurance. The first paragraph of this section includes what has become known as the principal purpose requirement, as follows:

"The superintendent of insurance shall refuse to grant any license applied for, and shall revoke any license of or to any appointee, agent, solicitor, or foreign broker, when the superintendent is satisfied that the principal use of such license has been or is to procure, receive, or forward applications for insurance of any kind, other than life, or to solicit, place, or effect such insurance directly or indirectly upon or in connection with the property of such appointee, agent, foreign broker, or solicitor or that of relatives, employers, employees, or that for which they or the appointee, agent, foreign broker, or solicitor are or is agent, custodian, vendor, bailee, trustee, or payee *** ."

This language is essentially repetitive of terms contained in the specific licensing sections for agents, solicitors and life insurance agents with two exceptions. This section includes the words "directly or indirectly" immediately following the words "effect such insurance." This language appears only in R.C. 3905.04 and not in the agent, solicitor, or life insurance agent licensing sections. These provisions apply to both the applicant and certain other related persons. In R.C. 3905.04, the agent, and the solicitor licensing sections, the statute applies to the applicant and the applicant's relatives, employers and employees. R.C. 3905.18, the life insurance agent licensing section, applies to the applicant and the applicant's officers, employees or shareholders.

R.C. 3905.04 provides that the superintendent of insurance shall refuse to grant and shall revoke a license to sell insurance of any kind, other than life, to any applicant when the superintendent is satisfied that the applicant's principal purpose is to place insurance directly or indirectly upon any of the following:

"1) The applicant's own property.

"2) Property belonging to the applicant's relatives, employers or employees.

"3) Property for which the applicant serves as an agent, custodian, vendor, bailee, trustee or payee.

"4) Property for which the applicant's relatives, employers or employees serve as an agent, custodian, vendor, bailee, trustee or payee."

The words "principal purpose" refer to a determination to be made by the superintendent of insurance based on the specific facts of a given case. The superintendent has enforced this language since at least the 1940's primarily through the use of a simple numerical test. Bulletin 89-1 indicates that, while a variety of factors will be considered, if the agent's sales to persons within one or more of the relationships enumerated in R.C. 3905.04 constitute more than fifty-one percent of the total premium volume for any one year, a violation of the principal purpose language will be presumed. Manifestly, this method may only be used after a license has been granted. In the case of an applicant not previously issued a license, the department simply requires that the applicant sign an oath or affirmation pertaining to his principal purpose. Ohio Adm. Code 3901-1-11(E).

The superintendent's use of the numerical test to substantiate a violation of the principal purpose requirement has been previously approved by this court. *Motors Insurance Corp. v. Robinson* (C.P. 1951), 62 Ohio Law Abs. 58; aff'd. *Motors Insurance Corp. v. Robinson* (Franklin App. 1951), 62 Ohio Law Abs. 72. As neither party objects to the use of such a test, and the interpretation of statutes by administrative agencies is given deference by the court, *State ex rel., Johnson & Higgins Co. v. Safford* (1927), 117 Ohio St. 576, 582, we find no fault with the continued use of the numerical standard. The test is, however, only a presumption and it may be overcome with an appropriate showing.

R.C. 3905.04, originally enacted in 1917 as G.C. 644-3, has remained in its present form since 1949. While the purpose of this section has been variously stated over the years, the court finds most persuasive the following statement appearing in *Motors Insurance Corp. v. Robinson, supra.*

"The purpose of the restriction was undoubtedly intended to prevent an unfair advantage in the placing of insurance and the licensing of persons who were not intending to do a general insurance business, but simply to supplement their primary business *** ." *Id.* at 69.

The *Robinson* case involved an automobile insurance company which apparently marketed its insurance specifically to the buyers of new and used automobiles. Each of the company s active Ohio agents were either a motor vehicle dealer or an officer or employee of such a dealer. It was the agents' practice to sell the insurance with the automobile as a single package. Al-

though the purchase of insurance was not a condition of sale, the court noted that in most cases the purchasers elected insurance. As is still the case today, most new car sales in 1951 were financed by a third party. Where a buyer elected to purchase insurance, the insurance premium was built into the installment loan payments and the financier would then forward the payments to the insurance company.

Acting pursuant to what is now R.C. 3905.04, the superintendent of insurance revoked the agents' licenses upon the ground that over fifty-one percent of the polices were sold to persons who had also purchased automobiles from the agent, his employer, or employees. The Franklin County Common Pleas Court affirmed the superintendent's interpretation of the statute. Most of the insurance placed by the agents was sold to persons with whom either the agent, his employer or employees had a vendor-vendee relationship regarding the property insured. As to the legislative purpose of this section as applied to the specific facts of the case, the *Robinson* court also noted:

"In the instant case it is not difficult to see that if automobile salesmen may be licensed as insurance agents without restriction or limitation, the effecting of all kinds of insurance involving automobiles could conceivably and reasonably become in theory, if not in fact, a monopoly controlled by that company or companies which were successful in having the automobile agents licensed to sell their insurance." *Id.* at 71.

The same issues are involved when a bank or other financial institution undertakes the sale of insurance. The transaction could be structured much the same way. When making a home mortgage or automobile loan, the bank could also offer insurance on the home or auto and the premiums would be incorporated into the loan payments. The principal purpose language in R.C. 3905.04 and 3905.01 would prohibit such a transaction if it was the bank's principal use of the insurance license. As to such insurance, the bank would be the payee on a loan secured by the property insured. Neither the bank nor its employees could qualify for an agent's or solicitor's license if more than fifty-one percent of the insurance sold covered such property.

Although plaintiffs have suggested that a bank also serves as an agent, custodian, bailee and trustee under other circumstances, none of these relationships is likely to violate the principal purpose language. The statute is only concerned with insurance placed on property where that property is also the subject of one of the above noted relationships. Where the property insured is not the subject of one of these relationships, the principal purpose language is not involved.

While the application of R.C. 3905.04 to banks and car dealers is thus clear, a question arises regarding the licensing of affiliates of the foregoing entities. Upon receiving applications for agency licensure from corporations affiliated with or owned by financial institutions, realtors, automobile dealerships and funeral homes, the superintendent of insurance sought the opinion the Ohio Attorney General. In an exhaustive, thirty-five page opinion, the Attorney General concluded that the principal purpose language in R.C. 3905.04 did not apply to the affiliates of non-insurance businesses as it did to relatives, employers and employees. 1988 Ohio Atty. Gen. Ops. No. 56. Adopting this opinion, the superintendent of insurance issued Bulletin 89-1. If implemented, this bulletin would permit the licensing of affiliates of financial institutions notwithstanding that a majority of the insurance sold by the affiliate was placed on property for which the financial institution serves as an agent, custodian, vendor, bailee, trustee or payee.

After adopting the report of the referee, the trial court held:

"DECLARED that Sections 3905.01, 3905.02, and 3905.04 of the Ohio Revised Code require Defendants, the Superintendent and the Department, to deny, to fail to renew or to revoke, in accordance with the requirements of Chapter 39 of the Ohio Revised Code, an insurance license to applicants and licenses that have solicited or sold or that propose to, intend to, or do solicit or sell property & casualty insurance principally upon or in connection with (i) the property of such licensee (or applicant) or of the licensee's (or applicant's) relatives, employers, employees or any affiliate thereof, or (ii) that property for which the licensee (or applicant) or any relative, employer, employee, or affiliate thereof is agent, custodian, vendor, bailee, trustee or payee; , and it is further

"DECLARED that Sections 3905.01, 3905.02, and 3905.04 of the Ohio Revised Code prohibit the licensing of any affiliate of a non-insurance financial or lending institution; and it is further

"ORDERED that, to ensure compliance with this Judgment Entry and pursuant to Section 2721.09 of the Ohio Revised Code, as well as to

prevent the working of irreparable harm upon Plaintiffs, the Superintendent and the Department are hereby enjoined from applying the interpretation of Sections 3905.01, 3905.02, and 3905.04 found in the Department's Bulletin No. 89-1 to the extent that those interpretations are inconsistent with the declarations contained herein *** "

We will consider the second assignment of error first. This assignment of error concerns the second part of the above-quoted judgment entry; wherein, the trial court declared that an affiliate of a non-insurance financial or lending institution may under no circumstances be granted a license to sell insurance. Such a *per se* rule is not supported within R.C. Chapter 3905. Even assuming that the statutes apply to affiliates of the applicant, the principal purpose language does not support such a *per se* rule. R.C. 3905.04 prohibits the licensing of applicants only where the applicant's principal purpose is to insure the property of persons with whom the applicant has one of the enumerated relationships.

This court has on a previous occasion invalidated such a rule when it was adopted by the superintendent. In *Motors Ins. Corp. v. Dressel* (1947), 80 Ohio App. 505, this court considered a rule prohibiting the licensing of any applicant connected with the auto sales business. In invalidating the rule, the court held that the statute "*** defines the requisite qualifications for agents of insurance companies, which qualifications may not be modified by any rule. *** " *Id.* at 509. R.C. 3905.04 does not necessarily prohibit an agent from insuring property for which he serves as an agent, custodian, vendor, bailee, trustee or payee, but applies only where that is the agent's principle purpose in applying for the license. See *Kraus v. Lloyd* (C.P. 1943), 46 Ohio Law Abs. 1, 2.

The judgment entry effectively prohibits the licensing of any affiliate of a non-insurance financial or lending institution regardless of whether it places any insurance on property within the restricted class. As this part of the trial court's judgment is not supported by the terms of the statute or applicable case law, it constitutes error.

Defendant's second assignment of error is well-taken.

The first assignment of error addresses the pivotal question presented in this case:

Are affiliates of the applicant included among the persons enumerated in R.C. 3905.04? By its terms, R.C. 3905.04 restricts the placement of insurance on the property of persons with whom the applicant has one of the specific relationships regarding that property. In order to prevent obstruction of these provisions, the statute applies to the applicant, as well as the applicant's relatives, employers and employees.

Thus, as an auto dealership cannot obtain an insurance agent's license for the principal purpose of insuring autos sold by the dealership, neither can the dealership's employee obtain an agent's or solicitor's license when his principal use of the license will be to insure autos sold by his employer, the dealership. The issue before the court is whether that same dealership can form a subsidiary with the principal purpose of obtaining an agent's license and insuring autos sold by its affiliate, the dealership. Under R.C. 3905.04, the applicant/subsidiary would be the focus of the inquiry. The statute also refers to the relationship between the applicant/subsidiary's relatives, employers, employees and the property insured. Plaintiffs maintain that the statute also requires an examination of the relationship between the applicant/subsidiary's affiliates and the property upon which the applicant has placed or intends to place insurance.

The words "affiliate" and "subsidiary" do not appear in R.C. 3905.04. While the life insurance agents' licensing section, R.C. 3905.18, refers to the applicant's shareholders and officers, this language was not included in R.C. 3905.04, 3905.01 or 3905.02. See, also, R.C. 3953.21(B) ("No bank *** real estate company or any subsidiaries thereof *** shall be permitted to act as an agent for a title insurance company").

Plaintiffs principally rely on the words "directly or indirectly" which appear in R.C. 3905.04, though not in 3905.01 or 3905.02. Plaintiffs maintain that this language prevents the indirect evasion of the statute through the use of subsidiaries. The words "directly or indirectly" appearing in a regulatory statute are often construed broadly to prevent circumvention of the statute. Further, insurance regulatory statutes are liberally construed to effect the purpose contained therein. *State, ex rel. Federal Union Ins. Co. v. Warner* (1934), 128 Ohio St. 261, 264. A rule of statutory construction may not, however, alter a statute's plain and unambiguous meaning. *Ohio Dental Hygienists Assn. v. Ohio State Dental Bd.* (1986), 21 Ohio St. 3d 21, 23.

Plaintiffs' suggested construction would alter the plain and unambiguous language of R.C. 3905.04. The phrase "directly or indirectly" modifies its antecedent, "solicit, place or effect

such insurance." The statute restricts the indirect placement of insurance on property for which the applicant is an agent, custodian, vendor, bailee, trustee or payee. Plaintiffs would apply the words "director indirectly," which appear in the middle of the paragraph, to the list of relationships appearing at the end of the paragraph. Thus, under plaintiffs' construction, the statute would restrict the placement of insurance on property for which the applicant is directly or indirectly an agent, custodian etc. Such a construction is not in accord with the plain wording of the statute. The phrase "directly or indirectly" cannot be moved from one place in a sentence to another as part of statutory construction.

Plaintiffs also rely on *State ex rel. Johnson & Higgins Co., v. Safford* (1927), 117 Ohio St. 576. *Safford* involved an out-of-state insurance broker, licensed in Ohio as a foreign broker, which repeatedly attempted to obtain an agent's license. Under G.C. §644, only Ohio residents could obtain an agent's license. In an attempt to comply with this section, the foreign broker formed an Ohio subsidiary corporation owned almost entirely by the out-of-state brokerage company. The court upheld the superintendent's refusal to grant an agent's license upon the grounds that the applicant should not be permitted to do indirectly that which is forbidden directly. The court did not, however, rely on the directly or indirectly language previously discussed. The court based its decision on the following basic rule:

"In the furtherance of justice, the fiction of a corporate entity may be disregarded where the corporation is so controlled and its affairs so conducted as to make it merely an instrumentality for the purpose of evading and circumventing a state law." *Id.* at paragraph one of the syllabus.

The *Safford* syllabus was later quoted and followed by the court in *Associated Adjusters v. Dept. of Insurance* (1977), 50 Ohio St. 2d 144, 148. The rule is also well-established in American Jurisprudence. E.g., *Schenley Distillers Corp. v. United States* (1946), 326 U.S. 432, 437. [1]

The *Safford* rule ultimately requires a case-by-case determination. Only where the specific facts of a given case indicate that the subsidiary is essentially the alter-ego of its parent formed primarily for the purpose of circumventing state law, will the court disregard the corporate fiction in order to give effect to the statutory purpose and intent. Due to the factually dependent nature of the *Safford* rule, *Safford* does not support

the trial court's finding that the applicants' affiliates must in every case be examined under the principal purpose test.

Therefore, this court concludes that R.C. 3905.04 does not apply to affiliates as it does to employers, employees and relatives. Considering the declaratory nature of this case, the court notes, however, that in certain cases the statute's applicability to employees may produce the same result. Where an insurance subsidiary retains the same employees as its vendor affiliate, the principal purpose limitation will apply to insurance placed on property sold by the vendor affiliates' employees to the extent that they are also employees of the insurance affiliate. See R.C. 3905.01 and 3905.02.

In sum, the trial court's interpretation of R.C. 3905.04 is not supported by the terms of the statute, nor can such a *per se* rule be based on the *Safford* case. A corporate applicant for an agent's license may be licensed regardless of its affiliates' activities subject only to the provisions of R.C. 3905.04 and the *Safford* case.

Defendant's first assignment of error is also well-taken.

The assignments of error are sustained. The judgment of the trial court is reversed, and the cause remanded for further proceedings consistent with this opinion and in accordance with law.

*Judgment reversed,*
*cause remanded.*

STRAUSBAUGH and KERN, J.J., concur.

KERN, J., retired, of the Montgomery County Court of Common Pleas, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.

---

[1] The court does not find *In The Matter of Suitability of 870-B Insurance Agency, Inc.* (Aug. 6, 1968), Franklin App. No. 8796, unreported (1968 Opinions 668), to be persuasive authority to the contrary. This unreported case is neither binding precedent nor did it apply the *Safford* case, although it would apparently have been applicable. Moreover, this case construed the life insurance agent's licensing section, R.C. 3905.18, not R.C. 3905.04, which is at issue in this case.