OPINION
{¶ 1} On February 26, 1997, Nu-Trend Homes, Inc. ("Nu-Trend"), Pingue Properties, Inc. ("Pingue Properties") and Giuseppe A. Pingue, Sr. ("Pingue") filed a legal malpractice complaint against attorneys John S. DeLibera ("DeLibera") and Jeffrey R. Bibbo ("Bibbo"), partners in the law offices of DeLibera, Lyons Bibbo ("DeLibera firm"), and against attorneys George C. Georgeff ("Georgeff") and Sandra E. Booth ("Booth") of the law firm of Georgeff and Booth ("Georgeff firm"). Each attorney was sued individually. The respective law firms were named defendants as well. Pingue is the principal shareholder and president of both plaintiff corporations. The 1997 complaint was voluntarily dismissed in accordance with Civ.R. 41(A) on September 3, 1998.
{¶ 2} Pursuant to the "savings statute," R.C. 2305.19, a second complaint involving the same parties and allegations was timely filed September 2, 1999. The re-filed complaint was signed on behalf of the corporate plaintiffs by their current counsel of record, not the attorney who prepared the original malpractice complaint, and by Pingue on his own behalf. The refiled complaint sets forth claims that pertain to the defendants' representation of the plaintiffs in the Franklin County Common Pleas Court in three underlying cases. All of the defendants answered and denied liability. Georgeff, representing himself, filed a counterclaim. Because of the number of parties and for the further reason that only Georgeff is alleged to have been involved in all of the underlying cases, a review of the claims to identify the parties subject of each case will facilitate our consideration of the issues raised by this appeal.
{¶ 3} The first three claims for relief relate to Nu-Trend Homes, Inc. v. Cartee, Franklin County Court of Common Please case No. 93CVH02-1111 ("Cartee") and appeals from the decision in that case.[1]
DeLibera, Bibbo and their firm represented the plaintiffs and Georgeff acted as their co-counsel in Cartee. Pingue Properties was not a party, so the refiled complaint does not include any allegation among the first three claims that Pingue Properties is entitled to relief. Similarly, Booth and the Georgeff firm are not named in connection with the Cartee claims and are not subject to potential liability based upon those claims.
{¶ 4} The fourth claim for relief involves allegations that Georgeff, Booth and their firm committed legal malpractice while representing Nu-Trend and Pingue Properties in Thompson, Hine Flory v. Pingue, Franklin County Court of Common Pleas case No. 94CVH07-4604 ("Thompson"), a collections action by a law firm that had formerly represented those corporations, and in the appeals that followed.[2]
Pingue was not sued individually in Thompson. He participated in the lawsuit as a corporate officer of the named defendants. DeLibera, Bibbo and the DeLibera firm had no role in the Thompson litigation.
{¶ 5} The fifth and sixth claims for relief allege the wrongful retention of files and malpractice by Georgeff, who represented Pingue personally, in Pingue v. Mirman, Franklin County Court of Common Pleas case No. 94CVA-1115, a malpractice action against his former attorney in a personal, domestic relations case. Nu-Trend and Pingue Properties were not parties. The malpractice allegations contained in the sixth claim for relief are that Georgeff failed to perform legal work in Mirman, although contractually obligated; that he did not withdraw from representing Pingue in the matter; and that Pingue, forced to hire substitute counsel shortly before trial, incurred additional expense. Neither Booth nor the Georgeff firm is mentioned in the claims relating to Mirman. The same is true with regard to DeLibera, Bibbo and the DeLibera firm. Although the case was appealed,[3] none of the lawyers or firms named as defendants in this case was counsel of record in that appeal.
{¶ 6} After substantial completion of discovery in this malpractice action, all defendants moved for summary judgment. The trial court granted all of the motions in a detailed decision dated and filed August 21, 2001. By a separate entry filed September 4, 2001, summary judgments in favor of all defendants were journalized, and the refiled complaint was dismissed.
{¶ 7} Counsel for Nu-Trend and Pingue Properties filed a timely notice of appeal from the summary judgments. The notice identified Pingue as an appellant in addition to the two corporations. Following a stay of these proceedings[4] for reasons unrelated to the issues to be decided, Nu-Trend and Pingue Properties filed their brief stating: "This brief pertains solely to the claims of Nu-Trend Homes, Inc. and Pingue Properties, Inc. It does not pertain to the individual claims of Giuseppe Pingue." Brief of appellants, at 1. Pingue did not file his own brief. DeLibera, Bibbo and the DeLibera firm moved pursuant to Loc.R. 9(D) of the Tenth District Court of Appeals to dismiss Pingue's appeal for failure to prosecute his own assertions of error. This court granted the motion by journal entry on January 8, 2003, and the individual appeal was dismissed.
{¶ 8} Since the assignments of error identified in the brief of Nu-Trend and Pingue Properties arose out of the Cartee litigation, they do not involve Booth or the Georgeff firm who moved to dismiss the appeal because no assigned error relates to them. We also granted this motion by our January 8, 2003 journal entry and dismissed the appeal as to those parties.
{¶ 9} Georgeff also filed a motion to dismiss the appeal, adopting the arguments made by the other attorneys and law firms as his own and further pointing out that he had not been served with a copy of the brief of appellants, as evidenced by omission of his name from among the recipients listed in the certificate of service appended to appellants' brief. Georgeff asked in the alternative for an extension of time to file his own brief. This court granted the alternative request by an entry journalized January 28, 2003. Georgeff filed his brief three days later incorporating the statement of the case, statement of facts and legal arguments set forth in the brief filed on behalf of DeLibera, Bippo and the DeLibera firm.
{¶ 10} Nu-Trend and Pingue Properties set forth the following assignments of error:
{¶ 11} "Assignment of Error No. 1[:] The trial court erred in granting the Defendants' Motion for Summary Judgment with respect to Defendants' advice and direction to Appellant to file an untimely Affidavit of Prejudice against the trial judge which resulted in sanctions.
{¶ 12} "Assignment of Error No. 2[:] The trial court erred in granting Defendants-Appellees' summary judgment with respect to Appellees' failure to present evidence of fraud at the pretrial motion in limine hearing, in opening statement and at trial.
{¶ 13} "Assignment of Error No. 3[:] The trial court erred in concluding that Attorney Boggs was not identified as an expert witness and would not be permitted to testify at trial."
{¶ 14} When an appellate court reviews a case concluded at the trial level by summary judgment, it does so de novo, applying the same standards as required of the trial court. Ryberg v. Allstate Ins. Co. (July 12, 2001), Franklin App. No. 00AP-1243, citing Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588. Civ.R. 56(C) provides:
{¶ 15} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. * * *"
{¶ 16} Summary judgment is appropriate where: (1) no genuine issue of material fact remains to be litigated: (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party. Ryberg, citing Tokles Son, Inc. v. Midwestern Indemnity Co. (1992), 65 Ohio St.3d 621, 629.
{¶ 17} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of fact on a material element of one or more of the nonmoving party's claims for relief. Dresher v. Burt (1996), 75 Ohio St.3d 280,292. If the moving party satisfies this initial burden by presenting or identifying appropriate Civ.R. 56(C) evidence, the nonmoving party must then present similarly appropriate evidence to rebut the motion with a showing that a genuine issue of material fact must be preserved for trial. Norris v. Ohio Standard Oil Co. (1982), 70 Ohio St.2d 1, 2. The nonmoving party does not need to try the case at this juncture, but its burden is to produce more than a scintilla of evidence in support of its claims. McBroom v. Columbia Gas of Ohio, Inc. (June 28, 2001), Franklin App. No. 00AP-1110.
{¶ 18} The elements of a legal malpractice claim are: "(1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." Vahila v. Hall (1997), 77 Ohio St.3d 421, syllabus. As recognized in Roseman v. Owen (Sept. 21, 2000), Franklin App. No. 99AP-871, in order to establish these elements under the Vahila holding, a party who asserts legal malpractice claims does not need to prove that it would have prevailed in the underlying case had the alleged negligent representation not occurred. Id. at 3.
{¶ 19} In some circumstances, however, that party will be required to produce evidence that the underlying claims were meritorious in order to satisfy the Vahila test. The Ohio Supreme Court recognized, "* * * the requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case." Vahila, at 427-428. Vahila does not relieve the party who asserts legal malpractice of the burden to show that the complained-of act or omission by its former attorney was the proximate cause of its alleged damage or loss. If the act or omission — even one that fails to conform to the standard required — does not relate to an underlying claim that is at least colorable, then it becomes difficult to conceive that damages or loss could be a proximate result of that act or omission.
{¶ 20} As noted above, the assignments of error only involve claims of legal malpractice that relate to the Cartee litigation. Pertinent portions of App.R. 12(B) provide:
{¶ 21} "When the court of appeals determines that the trial court committed no error prejudicial to the appellant in any of the particulars assigned and argued in the appellant's brief and that the appellee is entitled to have the judgment or final order of the trial court affirmed as a matter of law, the court of appeals shall enter judgment accordingly."
{¶ 22} We are unable to determine from the briefs, the record before us, and the oral argument that Pingue Properties, not a party in the underlying Cartee case, was prejudiced by any of the assigned errors. The reasons that support the granting of the motion to dismiss filed by Booth and the Georgeff firm apply as to Pingue Properties. Also, because the alleged acts of malpractice arose in the context of a matter in which Pingue Properties did not participate, we must conclude in relation to the errors argued in appellants' brief that the first element of a legal malpractice claim stated in Vahila — a duty or obligation to that party — is absent. As this court stated in All Climate Heating Cooling, Inc. v. Zee Properties, Inc. (May 17, 2001), Franklin App. No. 00AP-1141, "An appeal lies only on behalf of a party aggrieved by the final order appealed from." Id. at 2, citing Midwest Fireworks Mfg. Co., Inc. v. Deerfield Twp. Bd. of Zoning Appeals (2001), 91 Ohio St.3d 174, 177. Therefore, as to Pingue Properties, we overrule all three assignments of error.
{¶ 23} Nu-Trend as the sole remaining appellant, will be referred to as such in the balance of this opinion. Similarly, DeLibera, Bippo, the DeLibera firm and Georgeff will be jointly referred to as appellees, unless the context requires referring to them individually in order to provide clarity.
{¶ 24} Because these assignments of error relate to alleged malpractice by appellees while representing appellant during the Cartee litigation, we will summarize the circumstances of the underlying case. That factual background is more fully discussed in our opinion in Cartee. See fn. 1.
{¶ 25} In Cartee, Pingue and Nu-Trend asserted that they were entitled to payment of a real estate commission as the result of the sale of a commercial property by Chantry Square Joint Venture ("Chantry Square") to Dayton-Hudson Corp., dba Target Stores ("Target"). Pingue was a licensed real estate broker, and Nu-Trend was a commercial real estate company owned and operated by him.
{¶ 26} During 1989, Pingue represented Melvin Simon Company ("Melvin Simon"), a real estate development company, regarding the purchase of commercial real estate in central Ohio. Among the properties considered by Melvin Simon was an undeveloped tract owned by Chantry Square. Pingue negotiated a real estate brokerage agreement with Chantry Square whereby he became its exclusive agent for the purpose of selling the tract to Melvin Simon. Under the terms of the brokerage agreement, Pingue was to be paid a five-percent commission upon the sale of the property to Melvin Simon. Thomas Cartee, as representative of Chantry Square, and Pingue executed a letter memorializing the agreement. Chantry Square and Melvin Simon then signed an option agreement regarding the purchase of a commercial tract.
{¶ 27} Later in 1989, a representative of Target contacted Melvin Simon concerning the availability of commercial real estate in the Columbus area. Melvin Simon referred the Target representative to Pingue, who early in 1990 showed him several properties, including the Chantry Square tract. Target expressed an interest in that property, and a meeting in which Pingue participated took place among Target, Melvin Simon and Chantry Square to discuss the Melvin Simon option. Melvin Simon agreed to continue its option while Target and Chantry Square negotiated a possible direct purchase of the property by Target. Target and Chantry Square entered into their own purchase option agreement, following which Melvin Simon terminated its option.
{¶ 28} Pingue learned that the Target option did not provide for any commission payment and he contacted Target. He was assured by a Target employee that Chantry Square would pay the commission. However, Thomas Cartee, on behalf of the property owner, informed him otherwise. Target exercised its purchase option and Pingue did not receive a commission. Pingue and Nu-Trend filed their lawsuit seeking to recover a commission from the sale by Chantry Square to Target based upon theories of fraud, breach of contract, conspiracy and procuring cause.
{¶ 29} Prior to the trial in Cartee, the defendants filed a motion in limine seeking to exclude introduction of certain documents and testimony they contended were part of negotiations to settle or compromise Pingue's disputed claim for payment of commissions. On the day before scheduled hearing on that motion, Pingue filed an affidavit of prejudice against the trial judge seeking his removal from the case. The hearing was rescheduled as a consequence. The trial court subsequently found that the filing of the affidavit of prejudice so close in time to the scheduled hearing was frivolous conduct as defined in R.C.2323.51(A)(2)(a) and awarded attorney fees related to the continuance of the hearing because the affidavit included allegations concerning conduct, known to Pingue, that occurred more than four months prior to the filing.
{¶ 30} At the eventual trial the court granted directed verdicts in favor of the Cartee and the other defendants following opening statement on the fraud claims. It also granted directed verdicts at the close of the evidence on the breach of contract and conspiracy claims and on the procuring cause claim against Target. The procuring cause claim against Chantry Square was tried to a jury that returned a verdict in favor of the remaining defendant. In response to written interrogatories, the jury specifically found that Pingue did not bring Target and Chantry Square together in conjunction with the real estate purchase and that Target did not request his services with respect to the transaction.
{¶ 31} Appellant argues in support of its first assignment of error that the trial court erred in deciding that no genuine issue of material fact remains for the trier of fact to decide in relation to the claim that appellees committed malpractice by advising Pingue to file the affidavit of prejudice against the trial judge in Cartee. Appellant contends that the negligent advice and the late filing of the affidavit of prejudice consistent with that advice caused harm in two respects. First, appellant points to the monetary sanctions directly imposed against Pingue for having engaged in frivolous conduct. Second, it asserts that the filing of the affidavit set a negative "tone in Cartee which resulted in further damage." Brief of appellants at 6.
{¶ 32} Appellees respond generally that the underlying claims in Cartee lacked merit and that appellant is, therefore, unable as a matter of law to establish that the allegedly negligent representation proximately caused the damages it claims to have suffered. More directly countering the contention that negligent advice to Pingue to file an affidavit of prejudice against the trial judge was malpractice as to appellant, appellees assert that appellant lacks standing to raise that issue in this appeal because Pingue signed the affidavit as an individual and was sanctioned personally. Appellees further argue that the affidavit of attorney Ken Boggs, offered as expert testimony concerning the standard of care required by law and proximate causation, was insufficient to establish a genuine issue of material fact with respect to either the second or third element of legal malpractice under Vahila.
{¶ 33} Appellant replies that it has standing to raise the issue because Pingue filed the affidavit as its president as well as individually, and the interests of the corporation were identical to Pingue's interests.
{¶ 34} From our independent review of the record, we find that appellees sustained their initial burden to inform the trial court of the basis for their motion and to identify those portions of the record that demonstrate the absence of a genuine issue of fact on a material element of one or more of appellant's claims for relief. In support of their motion for summary judgment, appellees tendered an affidavit by Bibbo that: (1) established his qualifications as a licensed attorney to furnish the affidavit and an opinion as to whether or not appellees had complied with the standard required of practicing attorneys in the representation of their clients; (2) related the pertinent facts with respect to the representation of appellant in the Cartee litigation and appeal; and (3) offered the opinion that appellees complied with the required standard in their representation of Pingue and Nu-Trend throughout that case.
{¶ 35} Once the initial burden of the moving party has been met, the nonmoving party must present similarly appropriate evidence to rebut the motion with a showing that a genuine issue of material fact must be preserved for trial. Expert testimony is normally necessary to establish both that the attorney accused of malpractice has failed to conform with the standard required by law and that the attorney's conduct was the proximate cause of the damage or loss claimed as the basis for redress by the complaining party. Roseman, supra, at 5; Chutes v. Larrimer and Larrimer (Mar. 18, 1997), Franklin App. No. 96APE08-997; and Turner v. Carter (May 14, 2001), Stark App. No. 99 CA 231, citing Bloom v. Dieckmann (1983), 11 Ohio App.3d 202, 203.
{¶ 36} We note that the affidavit of prejudice was signed only by Pingue and does not on its face appear to have been executed in a representative capacity on behalf of appellant. Among the averments in the affidavit of prejudice are the following statements: (1) "Affiant states that he has, in the past, received unfair and prejudicial treatment by Judge Connor * * *," brief of appellant, Ex. B, at ¶ 2; and (2) "Affiant believes, based upon his past treatment by Judge Connor, and, based upon the most recent ruling by this Judge in the case pending before him, that affiant cannot receive a fair ruling * * *." Id. at ¶ 18. While Pingue refers to how the affiliated corporations were affected by the court's prior rulings, the substantive averments of unfairness and prejudice are stated in terms personal to him. Also, the journal entry ordering payment of attorney fees and costs as sanctions for frivolous conduct names only Pingue, among all the parties and attorneys that might have been named, as obligated by the finding of frivolous conduct.
{¶ 37} By arguing that it has standing to challenge the trial court's summary judgment on the claims of malpractice related to the affidavit of prejudice, appellant in essence asks us to recognize a reverse piercing of the corporate veil, a doctrine created to protect a corporation's creditors. Mihalca v. Malita (Apr. 12, 2000), Summit App. No. 19395; citing Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 287. This court recently noted, "Although reverse corporate veil piercing has been widely discussed, only a few jurisdictions have actually adopted the doctrine * * * and Ohio is not among them." (Citations omitted.) Mathias v. Rosser, Franklin App. No. 01AP-768, 2002-Ohio-2772, at ¶ 35.
{¶ 38} Appellant cites no authority to support its argument that simply because Nu-Trend is owned by Pingue, the interests of the corporation and its principal are identical. A corporation is a distinct legal entity, separate and apart from the natural individuals who formed it. Manning v. K.P. Adjusters, Inc. (Apr. 27, 2000), Cuyahoga App. No. 77012, citing Janos v. Murduck (1996), 109 Ohio App.3d 583, 587. Normally piercing the corporate veil works to hold owners of a corporation personally liable for corporate debts, Humitsch v. Collier (Dec. 29, 2000), Lake App. No. 99-L-099, based upon the premise that a corporation that is the mere alter ego of an affiliate or is established for the sole purpose of circumventing the law will not be recognized as an independent entity. Manning, at 2, quoting Ameritech Ohio v. Public Util. Comm. (1999), 86 Ohio St.3d 78, 82. Reverse piercing is a theory by which a party seeks to hold a corporate entity liable upon the personal obligation of a shareholder or principal. Id.
{¶ 39} In Belvedere, supra, the court explained the elements that need to be proved to justify making an exception to the separate identity of the corporate entity and pierce the corporate veil. There must be evidence to establish: (1) control over the corporation so complete that it has no separate mind, will, or existence of its own; (2) the control was exercised in a manner so as to constitute fraud or an illegal act against the person seeking disregard of the corporate entity; and (3) injury or loss to that person resulted from the control or wrong. Id. at 289. The same factors must be proved to justify a reverse piercing of the corporate veil. Humitsch, supra, at 5. Aside from the assertion of unity of interest, we find no evidence that establishes that appellant was Pingue's alter ego.
{¶ 40} Additionally, we find no authority for the proposition that the principal shareholder of a corporation can pierce the corporate veil of that corporation in order to avail himself of shared liability for a personal obligation. See Mihalca, supra, at 3 (commenting that a party seeking to pierce the veil in that case "* * * cites no authority for the proposition of allowing one shareholder in a corporation to pierce the corporate veil to impose liability on another shareholder"). Therefore, as to the financial sanctions imposed upon Pingue from the finding that he engaged in frivolous conduct in Cartee, appellant is not, as a matter of law, a party that may claim damage or loss as the proximate result of either the finding of frivolous conduct or the advice to file the affidavit of prejudice.
{¶ 41} Appellant arguably does have standing with regard to other harm it claims to have resulted from appellees' advice to file the affidavit of prejudice in the Cartee matter. However, contrary to appellant's suggestion, our review of the record does not disclose evidence that the litigation took a negative turn, prejudicial to appellant, after Pingue filed his affidavit seeking recusal or removal of the trial judge in that case. The record simply does not support appellant's position that any later action or particular ruling by the trial court was either tainted by the filing of the affidavit or prejudicial to it by reason of that filing. As a plaintiff in Cartee, appellant was unsuccessful; but to attribute the lack of success to the tone of the trial is speculative, at best. Appellant's contention that the tone of the trial resulted in "further damage," brief of appellants, at 6, is nonspecific.
{¶ 42} This court has held that, in a legal malpractice action, "[i]t is axiomatic that compensatory damages must be shown with certainty, and damages which are merely speculative will not give rise to recovery." Endicott v. Johrendt (June 22, 2000), Franklin App. No. 99AP-935. The evidence must establish a calculable financial loss because one of the essential elements of a legal malpractice claim is a causal connection between the conduct complained of and resulting damage or loss. Motz v. Jackson (June 29, 2001), Hamilton App. No. C-990644. A "speculative inference" that appellees' advice to Pingue to file the affidavit of prejudice was the proximate cause of appellant's failure to recover in Cartee, or of any other nonspecified, noncalculable loss is not sufficient to satisfy appellant's reciprocal burden to rebut the properly supported motion for summary judgment of appellees. Endicott at 9.
{¶ 43} Appellees are entitled to judgment as a matter of law on the issues identified in the first assignment of error for another reason. Appellant offered two affidavits — one by Pingue and one by attorney Ken Boggs — in opposition to appellees' motions for summary judgment. Regarding the form of affidavits submitted for that purpose, Civ.R. 56(E) provides in part:
{¶ 44} "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." (Emphasis added.)
{¶ 45} As mentioned above, expert testimony is normally necessary in a legal malpractice action. The circumstances under which a witness may testify as an expert are set forth in Evid.R. 702, which states the following:
{¶ 46} "A witness may testify as an expert if all of the following apply:
{¶ 47} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
{¶ 48} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
{¶ 49} "(C) The witness' testimony is based on reliable scientific, technical or other specialized information. * * *"
{¶ 50} That rule, however, must be read in conjunction with Evid.R. 703 and 705 to determine whether or not an expert witness's affidavit suffices for the purpose of opposing an adequately supported motion for summary judgment. C.R. Withem Enterprises v. Maley, Fairfield App. No. 01 CA 54, 2002-Ohio-5056, at ¶ 34. Evid.R. 703 provides, "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Evid.R. 705 allows the expert to "testify in terms of opinion or inference and give his reasons therefor after disclosure of the underlying facts or data * * * in response to a hypothetical question or otherwise."
{¶ 51} The Pingue affidavit recites, among other averments concerning the legal representation by appellees in Cartee, that his affidavit of prejudice was drafted by his attorneys just two days prior to the scheduled hearing of the motion in limine and was signed by him personally, then filed, following their advice. He states that he was so directed in order to "stall the hearing" and that as a result was sanctioned for frivolous conduct. This affidavit, furnished by a layperson, is not expert testimony, but it does state factual background that can properly be considered by a qualified expert in formulating and expressing an opinion as to compliance with the required standard of representation and as to proximate cause. The affidavit also includes conclusions as to the validity of certain legal theories and the importance of evidence in proving those theories. Those other conclusions are not proper pieces of the foundation for an expert's opinion, and we must disregard them. However, the averments relating to the affidavit of prejudice are confined to factual statements and may be considered evidence of record upon which an expert can base an opinion relating to professional negligence and to causation.
{¶ 52} The Boggs' affidavit qualifies him to offer expert testimony and expresses his familiarity with both the claims against appellees and the standard of care an attorney must ordinarily exercise as a member of the legal profession practicing in Ohio. Regarding the advice by appellees to Pingue to file the affidavit of prejudice, Boggs states:
{¶ 53} "After reviewing facts presented in this case, including the Affidavit of Joseph Pingue * * * it is my opinion to a reasonable decree (sic) of certainty that:
{¶ 54} "(a) An attorney who directs his client to file an untimely Affidavit of Prejudice against the sitting trial judge in order to avoid a pretrial hearing has not exercised the standard of care ordinarily exercised by members of the legal profession, and proximately caused sanctions, resulting therefrom * * *[.]"
{¶ 55} This statement does not define the requisite standard, but tends in general terms only to show that advice to file an affidavit of prejudice at the eleventh hour for the purpose of delaying a hearing falls below the standard. Absent from the statement, aside from mentioning that he reviewed "facts presented in this case" and Pingue's affidavit, is any recitation of the factual basis for his opinion. There is no explanation of why Boggs believes the standard of care was not met, nor is there an indication of what might have been done differently to meet the standard. This court has considered the adequacy of an affidavit by an attorney expert in a legal malpractice case who, as did Boggs, merely opined that the plaintiff's former lawyers did not meet the applicable standard of care. Katz v. Fusco (Dec. 9, 1997), Franklin App. No. 97APE06-846. In that case, we stated "[t]he affidavit does not state why Attorney Rakestraw believes that the standard of care was not met, nor does it * * * address a causal connection between the conduct complained of and/or the resulting damage or loss." Id. at 4. (Emphasis sic.)
{¶ 56} The court in Maley, supra, another legal malpractice case decided by summary judgment, also found an expert's affidavit to be insufficient. The affidavit included the averment that " '* * * it is my opinion that [the defendant lawyers] * * * committed legal malpractice * * * by failing to properly obtain and properly present sufficient expert witness testimony at trial as to the issue of the cost to repair the termite damage at the residence purchased [by plaintiffs].' " Maley at ¶ 30. The trial court concluded the affidavit was insufficient because the affiant " '* * * offers no facts, no statement of what an additional expert witness might have added to the case, nor any statement as to why witnesses who were called were deficient.' * * *" Id. at ¶ 32. The court of appeals agreed that the expert had merely expressed the conclusion that the witnesses in the original trial were insufficient, and held:
{¶ 57} "[A]ccording to Evid.R. 705, an expert witness is required to disclose the underlying facts or data he or she relied upon in reaching their [sic] opinion. In the case sub judice * * *.
{¶ 58} "* * * Mr. Ucker merely concludes, at paragraph nine of his affidavit, that appellees committed legal malpractice by failing to obtain and properly present sufficient expert testimony at trial concerning repair costs. Mr. Ucker, in paragraph ten of his affidavit, discloses the evidence he relied upon in reaching this conclusion. No where in Mr. Ucker's affidavit does he disclose the underlying facts or data he used in reaching this conclusion as required by Evid.R. 705." Id. at ¶¶ 36-37.
{¶ 59} Similarly, in Stamper v. Middletown Hosp. Assn. (1989),65 Ohio App.3d 65, 68-69, an engineer hired by the plaintiff in a slip and fall case to examine the stairway where the fall occurred furnished an affidavit in opposition to the defendants' motion for summary judgment in which he stated that he inspected the stairway; that he concluded it was negligently designed, constructed or installed; and that he further concluded the plaintiff fell as the proximate result of the identified deficiencies. The opinion was based on his observation that the treads on the stairway were not on a horizontal plane and that the risers were uneven in their height. The court held the affidavit was insufficient to establish proximate cause since it failed to outline any facts to support the conclusion that the fall was caused by the defects. The court characterized the engineer's statement regarding causation as "nothing more than a legal conclusion" and explained that "[a]ffidavits which merely set forth legal conclusions or opinions without stating supporting facts are insufficient to meet the requirements of Civ.R. 56(E)." Id. at 69. In addition, the court noted that the failure to disclose any underlying facts did not provide an adequate basis for the offered expert opinion as required by Evid.R. 705. Sufficient facts were stated to support the opinion that the stairs were negligently designed, constructed or installed, but not to provide the foundation for an opinion that the alleged negligence caused the fall and consequential injury.
{¶ 60} The affidavit offered by Attorney Boggs in opposition to summary judgment in this case states only legal conclusions and does not comply with Evid.R. 705. He does not disclose the underlying data that supports his opinion and does not give his reasons for the opinion based upon that data. The trial court did not err by disregarding the opinion expressed in the affidavit furnished by Boggs.
{¶ 61} For that reason, and because this appellant has neither shown that it is a party harmed by the decision in Cartee to award sanctions for frivolous conduct against Pingue, nor otherwise established that it is in a position to challenge in this appeal the trial court's summary judgment on the claims of malpractice related to the affidavit of prejudice, the first assignment of error is overruled.
{¶ 62} The second assignment of error relates to appellees' alleged failures to present evidence of the fraud claim, either at a pretrial hearing or at trial, and to adequately articulate that claim during opening statement so as to survive a motion for directed verdict pursuant to Civ.R. 50(A). The elements that must be proved to establish a claim of fraud are: "(1) a representation or, where there is a duty to disclose, concealment of fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent to mislead another into relying upon it, (5) with justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." Banks v. Nationwide Mut. Fire Ins. Co. (Nov. 28, 2000), Franklin App. No. 99AP-1413, citing Burr v. Stark Cty. Bd. of Comms. (1986), 23 Ohio St.3d 69, 73. The failure to prove any one of these elements is fatal to a plaintiff's case. Conley v. Willis (June 14, 2001), Scioto App. No. 00CA2746.
{¶ 63} A court reviewing a judgment whereby a motion for directed verdict is granted must consider both the opening statement and the allegations in the complaint to determine if the statement and allegations, construed liberally in favor of the nonmoving party, amount to a justiciable claim for relief. Graham v. Cedar Point, Inc. (1997),124 Ohio App.3d 730, 734. On direct appeal, this court accordingly considered "all the facts expected to be proved" and listed the elements of a viable fraud claim. Cartee at 7. We affirmed the granting of the directed verdict on the alleged fraud claim stating, "[t]hese factual allegations establish, at best, that plaintiff was deserving of some compensation from Chantry Square for his efforts in connection with the sale of the subject real estate to Target, but that Chantry Square consciously chose not to compensate him." Cartee at 8. The absence of a colorable fraud claim in the underlying matter entitles appellees to judgment as a matter of law on the claims that their failure to adequately pursue a theory of recovery based upon fraud constitutes legal malpractice. As stated earlier, in some circumstances, a party must produce evidence that the underlying claims were meritorious in order to satisfy the Vahila test. Vahila at 427-428.
{¶ 64} Even if the underlying fraud claim was colorable, the evidence presented by appellant in opposition to appellees' motion for summary judgment was insufficient to establish the existence of a genuine issue of material fact with respect to the malpractice claims based upon the failure to adequately pursue a fraud theory. The averment in Pingue's affidavit that he "* * * always believed the fraud claim was part of our case and was totally shocked when it was dismissed after opening statement * * *" is not probative as to a claim of malpractice. Nor is the averment that he, as the client, emphasized the importance of three letters at issue in the hearing on appellees' motion in limine and "* * * believed they established fraud on the part of Cartee, Chantry Square, and Target."
{¶ 65} Also, the Boggs' affidavit suffers from the same deficiencies we discussed in deciding the first assignment of error. Regarding the aspect of the malpractice claims which are the subject of this assignment of error, Boggs attested:
{¶ 66} "5. After reviewing facts presented in this case, including the Affidavit of Joseph Pingue * * * it is my opinion to a reasonable decree (sic) of certainty that:
{¶ 67} "* * *
{¶ 68} "(b) An attorney who fails to mention in his opening statement facts in support of a viable cause of action pleaded in the Complaint, such that said cause of action is dismissed after opening statement, has not exercised the standard of care ordinarily exercised by members of the legal profession, and have (sic) proximately caused dismissal of a cause of action upon which relief would be granted * * *[.]"
{¶ 69} This expression of opinion by Attorney Boggs does not comply with Evid.R. 705 in that he states only legal conclusions and neither discloses underlying data that supports his opinion, nor gives his reasons for the opinion based upon that data. See, Fusco, supra, at 4; and Maley, supra, at ¶ 32. The affidavit is insufficient to meet the requirements of Civ.R. 56(E). Stamper at 69.
{¶ 70} The second assignment of error is overruled.
{¶ 71} By the third assignment of error, appellant contends that the trial court erred to its prejudice by identifying noncompliance with Loc.R. 43 of the Court of Common Pleas of Franklin County, General Division, which requires pretrial disclosure of witnesses as an alternate basis for disregarding the content of the affidavit offered in opposition to the motions for summary judgment. The trial court first explained why it found the affidavit of Attorney Boggs to be substantively insufficient to satisfy the reciprocal burden of appellant to rebut an adequately supported motion for summary judgment by presenting evidence of such facts as would be admissible at trial. Civ.R. 56(E). The court then noted that Loc.R. 43.04 provides that a witness, expert or otherwise, whose identity is not included on a required witness disclosure list may not be called to testify at trial. On that basis, the trial court reasoned that, had it deemed Boggs' affidavit sufficient, Loc.R. 43 provided other grounds for disregarding its content and granting the motions for summary judgment.
{¶ 72} Producing a copy of a document titled "Plaintiffs' * * * Supplemental Disclosure of Witnesses," appellant asserts that the trial court was incorrect in concluding that it failed to comply with Loc.R. 43. Appellees concede that the identity of the witness was disclosed to them, as was his status as a potential expert, in that document which bore a certificate of service dated September 28, 2000. They suggest, however, that the document was not filed with the trial court as mandated by Loc.R. 43.01 and 43.[5] Our own review of the record certified to this court confirms that the only disclosures actually filed were initial and supplemental disclosures by the DeLibera firm and an initial disclosure by Booth and the Georgeff firm.[6]
{¶ 73} The trial court did not err by citing Loc.R. 43.01 as an alternative reason to disregard the content of the affidavit of appellant's expert. It applied the version of that rule — one that requires the filing of witness disclosures with the court — that was in effect at the time the disclosures were due. See Party Dock, Inc. v. Nasrallah (Oct. 5, 2000), Franklin App. No. 99AP-1345 ("this is not a situation where the trial court abused its discretion by failing to accommodate an untimely disclosure"). Even if we could find otherwise, no prejudice to appellant resulted from the court's stated alternative reasoning. As fully discussed in deciding the previous assignments of error, the affidavit of Attorney Boggs did not adequately raise genuine issues of material fact with respect to the standard of care required of appellees to be exercised in representing appellant or in relation to whether acts or omissions by appellees were the proximate cause of the harm claimed by appellant.
{¶ 74} The third assignment of error is overruled.
{¶ 75} Having overruled all three assignments of error raised by both Nu-Trend and Pingue Properties, and having concluded that appellees are entitled to summary judgments as a matter of law on the claims that are the subject of those assignments of error, we affirm the judgments of the Franklin County Court of Common Pleas.
Judgments affirmed.
DESHLER and BOWMAN, JJ,. concur.
[1] See, Nu-Trend Homes, Inc. v. Cartee (Sept. 12, 1995), Franklin App. No. 94APE10-1483, discretionary appeal not allowed, (1996),74 Ohio St.3d 1525.
[2] See Thompson, Hine Flory v. Pingue (Mar. 29, 1996), Franklin App. No. 95APE07-881.
[3] See Pingue v. Porter, Wright, Morris Arthur (Sept. 11, 1997), Franklin App. No. 96APE11-1613, discretionary appeal not allowed, (1998), 81 Ohio St.3d 1415.
[4] The stay was in effect from October 29, 2001 through October 23, 2002, inclusive.
[5] The original case schedule set the deadlines for the initial joint disclosure of witnesses as July 6, 2000 and for the supplemental joint disclosure of witnesses as September 28, 2000. Loc.R. 43.01 and 43.02 were amended, effective April 26, 2000, to include the language "* * * shall serve and file with the court a written disclosure of all persons with relevant factual or expert knowledge whom the party reserves the option to call as witnesses at trial." The prior versions of those rules, quoted by appellant, but not applicable at the time the respective disclosures were due in this case, required only that each party "* * * disclose all persons with relevant factual or expert knowledge * * *."
[6] The Record Certification by the Clerk of Courts contains a June 28, 2001 notation that a supplemental disclosure was filed that date, but examination of that document (No. 78) shows that it was a supplemental memorandum in support of plaintiffs' joint motion to extend the time to respond to defendants' motions for summary judgment.